No. 46,008

SALLY JANE SMALL, *Appellee*, v. PAXTON MERLE SMALL, *Appellant*.

(485 P. 2d 1365)

Opinion filed June 12,1971.

*Joseph S. Davis, Jr.,* of Gardner and Davis, of Olathe, argued the cause, and was on the brief for the appellant.

*Robert P. Anderson,* of Payne and Jones, of Olathe, argued the cause, and was on the brief for the appellee.

The opinion of the court was delivered by

FOTH, C.: This is an appeal by the husband-defendant from certain aspects of the trial court's judgment in a divorce action. Basically, his complaints in this court relate to the amount of alimony decreed, the property division, and the fact that he was ordered to pay in full his wife's attorney fees in this action.

The parties, Paxton (appellant) and Sally (appellee), were married in June, 1957, when Paxton was twenty-one and Sally was twenty. The early years of marriage are somewhat obscure in the record, but they were apparently tranquil enough to result in the first-born son, Eric, in 1961. However, in 1963, when Sally was pregnant with the parties' second son, Keith, Paxton announced his infatuation with another woman. With this announcement in March, 1963, he left his household and moved into an apartment. He thereafter sought the advice of a clinical psychologist in Kansas City, Missouri, and embarked on a course of treatment. He took Sally to the hospital for the birth of their child, Keith, and, after the birth took the two of them "home." He remained with his recently hospitalized wife and new-born son approximately five minutes.

Somewhat later, in September, 1963, there was a reconciliation; Paxton returned to his residence—apparently abandoning his un-named paramour — and the parties resumed their matrimonial relationship.

Paxton was a scion of the family which had owned substantially all of the stock of the Parkview Drug Company of Kansas City. By virtue of a merger, the company is now Parkview-G. E. M., Inc. Shortly after the marriage of the parties, and after completion of his six-month obligatory service in the armed forces, Paxton started in the family business as an assistant buyer, with a gross salary of about $350 per month. He progressed through the company hierarchy to the rank of buyer, with the title of vice-president, and at the time of his divorce his gross salary was $30,000 per year.

In the meantime, after the reconciliation referred to above, they bought a house in Leawood, Kansas, which, with improvements they made, was valued at almost $60,000.

As the marriage progressed, Paxton continued his consultations with his clinical psychologist at intervals of two to three times a week. The efficacy of this treatment does not appear, but Sally's testimony is that he once again became cool, withdrawn and uncommunicative. Finally, in 1968, the axe appears to have fallen on Sally's hopes for a continued marital relationship. Paxton announced that if she did not seek a divorce, he would. After protracted discussions with Paxton, his psychologist and her father, all in an effort to preserve the marriage, Sally commenced this action.

Counsel for Paxton, with admirable candor, has conceded to this court that the divorce granted to Sally by the trial court is in the best interests of both parties. Paxton, he concedes, should probably not be married to anyone in his present psychological state. Regardless of this estimate of the husband, the evidence clearly sustains the trial court's judgment of divorce against the husband, Paxton, and he does not appeal from that portion of the judgment.

Yet to be considered are Paxton's basic complaints.

Taking them in inverse order, we hold, first, that the award of attorney fees of $4,000 to Sally's attorneys was not an abuse of the trial court's discretion. Although designated in his statement of points, in this court Paxton's counsel did not complain of the amount of the award. He insists, however, that a wife capable of paying (as Sally obviously is) should share a portion of the attorney fees awarded by the court.

A similar contention was made in *Brooker v. Brooker*, 199 Kan. 783, 433 P. 2d 363. The court there said (p. 786):

"In his brief defendant appears to take the position that, under the property settlement and alimony adjudged by the trial court, the plaintiff was entirely

capable of paying her own attorney fees and should have been required to do so.

"Under our statutes K. S. A. 60-1607 (*d*) and K. S. A. 60-1610 (*f*), now K. S. A. 1965 Supp. 60-1610 (*f*), costs and attorney fees for the preparation and trial of the case may be awarded to either party as justice and equity may require. The district court is vested with wide discretion to determine both the amount and the recipient of an allowance of attorney fees. Such discretion will not be disturbed on appeal unless an abuse of discretion clearly appears from the record."

It may be noted that the award there was for $3,500, with the property division involving $120,000. Here, the net marital estate exceeded $175,000. It is true the trial court conducted no formal hearing on the award, although Sally's counsel offered to produce evidence. However, as pointed out in *Bennett v. Bennett*, 175 Kan. 692, 699, 266 P. 2d 1021:

"In this connection it also may be well to remember a trial judge is a lawyer in his own right and is not without knowledge concerning the value of legal services. It goes without saying the trial judge approved the order he made."

Paxton's second point concerns the division of the parties' property. Once again, his counsel candidly concedes that under our statutes, and particularly K. S. A. 1970 Supp. 60-1610 (*b*), the subject is largely entrusted to the discretion of the trial court. See, *e. g., Cool v. Cool*, 203 Kan. 749, 457 P. 2d 60, Syl. 3. No complaint is made as to the order that the family home be sold and the parties' equity be equally divided. There is resistance to the division of 3,000 shares of Parkview-G. E. M. stock received by Paxton from his mother, conditioned on an annuity payment to her of $8,327.46 per year.

The trial court awarded Sally one-half (1,500) of these shares, but imposed on her the responsibility of paying one-half of the contractual annuity. The record indicates, and counsel in this court agree, that the amount the parties are obliged to pay is the actuarial equivalent of the value of the stock at the time of the contract. (There is some intimation that today the stock may be worth less than the parties are obligated to pay for it.) Paxton argues that his continued ownership of this stock is important to his job security. This seems highly speculative, particularly in view of the fact that his uncle is president of the company. It certainly furnishes this court with no foundation for finding an abuse of the trial court's discretion.

The most serious objection Paxton makes to the trial court's order is that portion requiring him to pay to his former wife alimony in

the amount of $900 per month for life or until she remarries. No complaint is made of the $400 per month ordered for support of the two children.

In support of his contention, Paxton points to that portion of the record showing that, after deductions for state and federal income taxes, F. I. C. A., a savings bond and insurance, his net take-home pay prior to the divorce was about $1,600 per month. The four of the family apparently lived comfortably on that salary (together with such other income as Paxton may have derived from his ownership in the family business).

At first blush, to require a man with $1,600 in monthly take-home pay to pay $1,300 of it to support his ex-wife and two children may seem to be an excessive demand upon his resources. However, and again with admirable candor, Paxton's counsel computes that the "after-tax" effect of the order—with alimony deductible to the husband and taxable to the wife—will be to allow Paxton $900 per month, free and clear, to support himself, while Sally will have $1,150 per month to support herself and two children of school age. Counsel for Sally agreed before this court to the accuracy of these figures.

The only testimony adduced as to need, either on direct or cross-examination, was Sally's testimony that she would require about $1,500 per month to live on. This testimony was unrefuted. Leaving wholly apart the question of Paxton's fault, with which the record abounds, the trial court's allocation of Paxton's after-tax salary among the four members of his family does not appear to this court to be a manifest abuse of its discretion. In any event, should circumstances change, Paxton can always apply for a modification as to alimony not yet due under K. S. A. 1970 Supp. 60-1610 (c). See *Folk v. Folk*, 203 Kan. 576, 455 P. 2d 487; *Moran v. Moran*, 196 Kan. 380, 411 P. 2d 677.

The judgment is affirmed.

APPROVED BY THE COURT.