No. 55,718

First Bank of WaKeeney, Kansas, A Corporation, *Plaintiff-Appellee*, v. Ernest C. Moden and Henrietta L. Moden, Husband and Wife, and Eric Moden, *Defendants-Appellants*, and Federal Land Bank Of Wichita, Wichita, Kansas, *Defendant-Appellee*.[1]

(681 P.2d 11)

Opinion filed March 24, 1984.

*Ross Wichman,* of Kent, Wichman and Anderson, of Hays, argued the cause and was on the brief for defendants-appellants.

*David J. Harding,* of WaKeeney, argued the cause and was on the brief for plaintiff-appellee.

*Basil C. Marhofer,* of Ness City, was on the brief for defendant-appellee.

*Per Curiam:* This is an appeal by two of the defendants, Ernest C. Moden and his wife, Henrietta L. Moden, from the judgment of the Trego District Court in this mortgage foreclosure action. The main issues raised are whether the plaintiff, First Bank of WaKeeney, Kansas, owed Mr. and Mrs. Moden a fiduciary duty, and if so, whether it breached that duty; whether the WaKeeney bank failed to comply with a loan agreement; and whether the WaKeeney bank is estopped from bringing this action.

The Federal Land Bank of Wichita, Wichita, Kansas, is a defendant. It held a first and prior mortgage on the bulk of the Moden land. It filed a counterclaim and sought judgment against Mr. and Mrs. Moden on its note and foreclosure of its mortgage. After trial, the district court granted the Federal Land Bank judgment against Mr. and Mrs. Moden in the sum of $592,612.01, plus interest accruing after date of judgment at the rate of $197.18 per day until paid; and the court ordered the Federal Land Bank's mortgage foreclosed as a first and prior lien against the land described in that mortgage. No complaint is made in this appeal as to that judgment and order of foreclosure. It is affirmed. We need not discuss it further. When reference is made later in this opinion to "the Bank," we speak of the plaintiff, First Bank of WaKeeney.

---

1 **REPORTER'S NOTE:** Previously filed as an unpublished opinion, this opinion was required to be published by an order of the Supreme Court dated April 26, 1984, pursuant to Rule 7.04.

Eric Moden, son of Mr. and Mrs. Ernest Moden, filed a motion and was granted leave to intervene. He then filed a third-party petition stating various theories by which he sought to escape liability upon an unsecured $24,099.45 promissory note which he executed and delivered to the Bank on or about May 10, 1982, and which note had since been renewed several times. The trial court found against Eric Moden and denied him relief. While Eric joined in the notice of appeal, no error in the court's order denying him relief was claimed in the briefs or oral argument. That portion of the trial court's judgment is affirmed, and we need not discuss it further. When reference is made later in this opinion to the Modens, we shall be speaking of Ernest C. and Henrietta L. Moden.

The trial judge prepared and filed a lengthy and detailed memorandum in this case. He determined the facts, some upon disputed evidence, and he then discussed and decided the applicability of each of the defenses raised by the Modens. Since the parties to this action are already aware of the judge's decision, we need not repeat it here. The judge carefully considered each point raised, and upon review we affirm.

We briefly summarize the evidence. The Modens, farmers and ranchers in Trego County, borrowed money from the Bank at least as far back as 1972. Every six months, Mr. Moden would prepare a plan for the operation of his ranch for the next six months and present it to the Bank along with a request that his note be renewed in a larger amount. The notes were secured by perfected security agreements covering livestock, grain, feed and machinery. By January 21, 1982, the indebtedness had grown to $892,389.76. That amount exceeded the Bank's lending limits, and other banks had participated in the loan. The National Bank of America (NBA), in Salina, announced that before it could participate in an extension or renewal, it required that the Bank secure (1) a second mortgage on the Moden land which was subject to the Federal Land Bank's first mortgage, and (2) a first mortgage on an undivided and unencumbered one-half interest in a half section owned by Henrietta Moden. Reluctantly, the Modens executed these mortgages, which now form the basis for plaintiff's foreclosure action.

Mr. Moden presented the Bank with a farm plan at the time of the January 1982 note renewal. It was his plan to reduce the indebtedness by selling cattle, wheat, excess equipment, and

some real estate. Over the next few months the Modens did sell cattle, grain and some equipment, and paid $478,591.03 to the Bank on their note.

Also at the time the note was renewed, the Modens, the Bank and NBA entered into a Loan Agreement, which provided for the execution of the mortgages and for the sale of cattle and other collateral. It required the Modens to make application for an FHA loan of $200,000 and an FHA emergency low-interest-rate loan of $40,000. The Loan Agreement also provided that "[i]t is the intention of all parties hereto that the NBA participation be paid in full as soon as possible  . . . ."

We turn to the first issue: Was there a fiduciary duty on the part of the Bank? The rules applicable when making that determination are set forth fully in *Olson v. Harshman,* 233 Kan. 1055, 1057-1059, 668 P.2d 147 (1983). There are two types of fiduciary relationships, those specifically created by contract, and those implied in law due to the factual situation surrounding the transaction and the relationship of the parties. There is no contract here between the parties creating such a relationship; any fiduciary relationship between the Bank and the Modens must be one implied in law. Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another. In addition, courts have considered weakness of age, mental strength, business intelligence, knowledge of the facts involved or other conditions giving to one an advantage over the other. None of these factors is demonstrated by the evidence here. There was no reposing of confidence in the Bank by the Modens, no dominance, no inequality, no dependence, no acting for another, no exercising of influence. We agree with the trial court:

"There is no evidence which would suggest anything other than the ordinary debtor/creditor relationship between the plaintiff Bank and these defendants [the Modens]."

Ordinarily, the relationship between a bank and its customer is that of creditor-debtor and not that of a fiduciary. *Denison State Bank v. Madeira,* 230 Kan. 684, 695, 640 P.2d 1235 (1982); *Dugan v. First Nat'l Bank in Wichita,* 227 Kan. 201, 207, 606 P.2d 1009 (1980).

The Modens claim that the bank obtained the mortgages by making misrepresentations. This claim focuses upon the statement made by the bank officer to the Modens to the effect that they had already pledged their interest in real estate to the bank by the Unlimited Guaranties which both Modens had signed. This was neither fraud nor a breach of fiduciary duty. The Salina bank had refused to extend further credit unless the Modens executed mortgages. Had the Modens refused, no renewal note would have been signed, no extension of credit would have occurred, and suit would have been instituted in January 1982. By lis pendens, the Modens' interest in the real estate would have been encumbered. While the statement of the bank officer may not have been precisely and legally accurate, there is no showing that it was made in bad faith, or that the statement motivated the Modens to execute the mortgages, or that they relied upon the statement to their detriment. There was no fiduciary duty, no breach of fiduciary duty, and no fraud.

The next issues arise from the Loan Agreement. The Modens contend that the Bank breached that agreement when it did not apply all of the payments made by the Modens from the sale of cattle and machinery to the portion of their indebtedness in which NBA participated, that the Modens complied fully with their obligations under the Loan Agreement, and that these facts entitle the Modens to judgment in the full amount remaining unpaid on their note.

The Loan Agreement provided in part that all the proceeds from sale of livestock be applied to the NBA's portion of the January 21, 1982, note. Some $434,000 of the $478,000 paid by the Modens on their indebtedness came from sale of livestock. The Bank paid NBA about $370,000 and retained the balance to apply upon its portion of the note, explaining at trial that the retention was necessary in order for it to remain in compliance with state law. Assuming that this was a knowing violation of the Loan Agreement by the Bank (and the record does not clearly support such an assumption), we turn to the Modens' compliance with the terms of that agreement.

The Modens were required to apply for an FHA loan and a smaller FHA emergency low-interest-rate loan. Mr. Moden testified in substance that he discussed a loan with an FHA em-

ployee and was told that there wasn't really anything the FHA could do until Moden fulfilled the Loan Agreement, got the NBA paid off, and got the wheat harvested and the cattle sold. Moden never made formal application to the FHA. After the cattle were sold, the wheat harvested, and a sum paid to the Bank which Moden thought would pay off the NBA loan, he did not return to FHA and make the application required of him under the Loan Agreement.

The Bank's application of Moden's payments was in no way prejudicial to the Modens. All of the payments were applied against the total indebtedness. At the time suit was filed, the Bank contended that there was at least $100,000 of the remaining loan which was not secured by collateral. Whether the Bank held all of the remaining obligation, or whether it was shared by another bank, is immaterial. In either event, the note remains due and unpaid, and the holder is entitled to bring action upon it. The Modens are not entitled to judgment for the remaining unpaid portion of their note because of the way in which the Bank applied the payments. We find no prejudice and no error.

Finally, the Modens contend that the Bank is estopped to foreclose because (1) the Modens complied with the farm plan and the Loan Agreement, and (2) the Bank had always extended credit in the past and was therefore obligated to do so in the future. We have discussed the Loan Agreement above and need not extend that discussion. As noted above, the Modens did not comply with all of its terms. The farm plan, prepared by Mr. Moden and given to the Bank at the time the January 1982 note was executed, was not contractual and binding upon the Bank. It simply detailed Moden's proposed farm operations for the coming months. The Bank did not agree to renew the Modens' loan if the farm plan was successfully carried out. The mere fact that a bank has renewed loans in the past does not require it to do so in the future.

A party asserting equitable estoppel must show that another party, by its acts, representations, admissions, or silence when it had a duty to speak, induced it to believe certain facts existed. It must also show that it rightly relied and acted upon such belief and would now be prejudiced if the other party were permitted to deny the existence of such facts. *Iola State Bank v. Biggs*, 233 Kan. 450, Syl. ¶ 4, 662 P.2d 563 (1983). There is no evidence in

this case that the Bank, by its actions, induced the Modens to reasonably believe that they would get an extension of their loan, regardless of their ability to pay their obligations, if they complied with the farm plan and the Loan Agreement. As the trial court observed, "Promissory estoppel involves both misrepresentation and detrimental reliance." Neither is present here.

The judgment is affirmed.