No. 55,426

MARY JANE REICH, *Appellee,* v. DALE REICH, *Appellant.*

(680 P.2d 545)

Opinion filed April 27, 1984.

*Thomas C. Boone,* of Hays, argued the cause and was on the brief for appellant.

*Michael S. Holland,* of Russell, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is an appeal from an order dividing the property of the parties following the granting of a divorce. This action was commenced in the district court of Russell County by the plaintiff, Mary Jane Reich, against the defendant, Dale Reich, seeking a divorce, division of property, alimony, attorney fees, and costs. A divorce was granted on November 23, 1982, on the grounds of mutual incompatibility, and no appeal was taken from that order. Both parties have since remarried.

After a full trial, the trial court divided the property between the parties, denied alimony or attorney fees, and taxed the costs to the plaintiff wife. The journal entry was filed on February 17, 1983, and it is from that order that the husband appeals. Three issues are raised: Whether the court abused its discretion in dividing the property; whether the court abused its discretion by failing to consider the tax consequences of its property division; and whether the wife's proposed findings concerning alimony and division of property were erroneously admitted evidence of compromise.

The first issue requires us to review the facts. Plaintiff and defendant married on June 6, 1954. The couple started with little or nothing, but acquired substantial assets over the years. Much of the wealth consists of family ranch operations which the husband's father started during the 1930's and then gradually transferred to his son. Defendant paid for some of the land, but

the bulk came to him by gift. Additionally, some other land has been purchased. The husband has been primarily a rancher and cattleman; the wife has not been employed outside the home. She has an artificial hip and a ruptured disc, anticipates additional surgery, and is unable to work.

The trial court awarded the entire ranch, including the almost-new home thereon, all of the stock, cattle, machinery and equipment, and a small Colorado property, to the husband. The court divided the mineral interests equally between the parties, with the provision that the wife's portion be for life only and that upon her death her interest would revert to the surface owner of the land. The trial court awarded the wife a judgment in the amount of $500,000, payable $200,000 in cash, and the balance of $300,000 payable in twelve equal annual installments of $25,000 each, the first installment to have been paid February 1, 1984, with interest at eight percent per annum on the unpaid balance to have commenced accruing on that date. The judgment is made a lien upon the ranch. The trial court also awarded the wife a residence in Colorado. The trial court denied the wife's request for alimony and attorney fees, and taxed the costs to her.

The property or interests passing to the parties under the court's decree may be summarized as follows:

TO THE WIFE:

| | |
|---|---|
| Money judgment | $500,000.00 |
| Life estate in minerals | 85,000.00 |
| Pitkin, Colorado, property | 60,300.00 |
| Total value .................... | $645,300.00 |

(The parties are in agreement as to the foregoing values.)

| TO THE HUSBAND: | WIFE'S VALUATION | HUSBAND'S VALUATION |
|---|---|---|
| Cattle | $ 192,170.00 | $ 125,750.00 |
| Minerals | 85,000.00 | 85,000.00 |
| Pasture land | 463,230.00 | 409,394.00 |
| Crop land | 276,877.00 | 276,877.00 |
| Farmstead & improvements | 132,750.00 | 109,101.00 |
| Equipment | 203,241.00 | 182,100.00 |
| Tin Cup Colo., property | 10,000.00 | 10,000.00 |
| Gross value | $1,363,268.00 | $1,198,222.00 |
| Less current indebtedness | 50,000.00 | 50,000.00 |
| Net Value | $1,313,268.00 | $1,148,222.00 |

Disregarding the minerals, which the parties will share, the husband received all of the income-producing property—the ranch, machinery, equipment, cattle and feed. Total net value of that property is, by either party's computation, well over a million dollars. Plaintiff's judgment is approximately half of that amount. We have not included in our computation the interest which may accrue in future years on plaintiff's judgment, or the income which may be earned or accrue to the husband in future years.

The statute which guides the courts in the division of property in divorce actions is K.S.A. 60-1610(*b*). That statute reads:

"(*b*) *Financial matters.* (1) *Division of property.* The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts, by: (A) a division of the property in kind; (B) awarding the property or part of the property to one of the spouses and requiring the other to pay a just and proper sum; or (C) ordering a sale of the property, under conditions prescribed by the court, and dividing the proceeds of the sale. In making the division of property the court shall consider the age of the parties; the duration of the marriage; the property owned by the parties; their present and future earning capacities; the time, source and manner of acquisition of property; family ties and obligations; the allowance of maintenance or lack thereof; dissipation of assets; and such other factors as the court considers necessary to make a just and reasonable division of property."

The earlier forms of this statute have been held to vest the trial court with broad discretion. In *Bohl v. Bohl*, 232 Kan. 557, 561, 657 P.2d 1106 (1983), we said:

"There is no disagreement on the rules governing division of property pursuant to divorce. The trial court 'is under a duty to divide the marital property in a 'just and reasonable manner.' K.S.A. 1981 Supp. 60-1610(*d*). In determining a just and reasonable division of the property the trial court should consider: (1) the ages of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) the present and future earning capacities of the parties; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the question of fault when determined; and (8) the allowance of alimony or the lack thereof. *Powell v. Powell*, 231 Kan. 456, 459, 648 P.2d 218 (1982); *Parish v. Parish*, 220 Kan. 131, 133-34, 551 P.2d 792 (1976).

" 'In a divorce action the district court is vested with broad discretion in adjusting property rights, and its exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse.' *Powell*, 231 Kan. at 459. See also *Downing v. Downing*, 218 Kan. 549, 542 P.2d 709 (1976). '[D]iscretion is abused only where no reasonable [person] would take the view adopted by the trial court. If reasonable [persons] could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion.'

*Powell,* 231 Kan. at 459. *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973)."

The statute today remains substantially as it has been for many years, the only notable exception being the deletion of "fault" from the items which the trial court must consider, and appellant does not contend that that item was considered here.

Appellant contends that he will be required to sell the ranch, or at least liquidate a major portion of his assets, in order to satisfy the judgment which the trial court awarded to the plaintiff. Appellant cites a number of cases from other jurisdictions which espouse the desirability of keeping the family farm together as a matter of public policy. He also cites the following language from *Bohl v. Bohl:*

"However, we recognize and acknowledge it would be unfair to require Mr. Bohl to liquidate his company and turn the proceeds over to Mrs. Bohl with nothing left for him. If this were the case it would defeat the trial court's goal of dividing the marital property equally." 232 Kan. at 565.

We do not disagree with the statements quoted above, but feel that they are not applicable here. First, Mr. Reich testified that he wanted to keep the ranch together and wished to take his son in as a partner and pass the ranch along to him. The trial judge awarded the entire property to Mr. Reich, thus indicating his intention that the property should be kept together and in the family. The judge also heard argument that the proposed judgment would cause the defendant to liquidate the ranch, but he was not required to accept such contentions. In any event, the evidence does not show that Mr. Reich is left with nothing, nor does it show that the trial court's goal of dividing the property equally has been defeated.

Mrs. Reich presented testimony that a local bank had extended to her a letter of credit for the sum of $750,000 and that the bank would extend similar credit to the defendant. In addition, the trial court had before it testimony that the defendant had substantial cash flow, including a net cash flow for the first nine months of 1981 of more than $70,000, and that he had purchased large amounts of new equipment within the past few years without borrowing money to do so. There was also evidence that defendant's taxable income for the years 1980 and 1981 was not large, but defendant's tax returns were in evidence and the trial court had an opportunity to examine the figures contained

therein. Upon a thorough examination of the evidence, we are not convinced that the defendant will be compelled to liquidate the ranch in order to meet the payments required of him by the trial court's judgment. True, he may be required to borrow; but that is not grounds for setting aside the trial court's judgment.

In *Stayton v. Stayton,* 211 Kan. 560, 506 P.2d 1172 (1973), we said:

"We have said many times that the district court is vested with wide discretion in adjusting the financial obligations of the parties in a divorce action and that its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse. . . . In determining the amount in each case the trial court may, among other things, take into consideration the conduct of the parties, their financial situation, the needs and the earning capacities of the parties, and make such an award as will be just and reasonable under all the circumstances. The discretion of the trial court is, of course, subject to appellate review and correction where there has been a clear-cut abuse of discretion. In its exercise a judge may not be arbitrary or whimsical. We have held on a number of occasions that abuse of judicial discretion, as that term is ordinarily used, implies not merely an error in judgment, but perversity of will, passion or moral delinquency when such discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence.

. . . .

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." 211 Kan. at 561-562.

Applying those rules to the facts before us, we do not find that the trial court's action was "arbitrary, fanciful or unreasonable," or that "no reasonable man would take the view adopted by the trial court." We hold that the trial court did not abuse its discretion.

Next, we turn to the issue of tax consequences. The defendant contends that the trial court failed to consider the tax consequences of its order. Defendant would obviously prefer a more modest award to the wife, and one which would permit the payment to be tax deductible to him. While the trial court did not specifically state on the record that it was taking into consideration the various provisions of the Internal Revenue Code, the trial court was presented with much evidence and argument

regarding the tax aspects of any proposed order in this case. We cannot say that the trial court ignored that evidence.

Finally defendant contends that the trial court erred when it permitted the plaintiff to testify that she was willing to pay the defendant $700,000 for his interest in the ranch. This was not an offer of compromise but a statement of the plaintiff's proposed valuation and division of property. K.S.A. 60-452, relating to the nonadmissibility of evidence of offers to compromise damage or loss, is inapplicable. The evidence was relevant and admissible.

Defendant's primary argument is that he will be required to liquidate the ranch in order to pay the judgment, and that the trial court should have made the payments taxable to the wife as alimony, rather than taxable to the husband as division of property. The trial court exercised its judgment in ordering the payments specified, and we cannot say that it abused its discretion. The matter of forced liquidation is one of argument, which was not persuasive when made to the trial court and is not persuasive here. The matter of to whom the payments are taxable will vary from case to case, depending upon the type of payment ordered. Here, the trial court denied alimony but decreed an equitable division of property. We find no abuse of discretion and no reversible error.

The judgment is affirmed.

SCHROEDER, C.J., dissenting: In making a division of the marital property in this case the trial court failed to apply the most recent amendment to K.S.A. 60-1610(*b*)(1), effective January 1, 1983. It failed to give consideration to the *"dissipation of assets"* in making a division of property in the divorce action in accordance with the admonition of the legislature. Accordingly, in my opinion, the trial court abused the exercise of its power of discretion in making an award to the plaintiff which is confiscatory of the portion of the property awarded to the defendant. The effect of the decree results in forcing the termination of the defendant's farming operations and means of livelihood.

On the surface the opinion as written for the court appears equitable and just, but when the record and decree are analyzed in terms of satisfying the judgment awarded the wife in the light of tax consequences upon sale of the property, and current interest charges in the event money is borrowed to pay the cash award to the wife, the realities of the decree become apparent.

The stage for a cash award to the wife in the trial of this matter was set by the wife and her counsel when, on the *day before trial* on the issues concerning alimony and division of property, the wife went to the Home State Bank in Russell, Kansas, on January 17, 1983, and procured a letter of credit which was introduced into evidence as plaintiff's Exhibit No. 17. It simply states the bank has opened a credit of $750,000 in favor of Mary Jane Reich whose drafts to that extent at sight upon the bank will be honored if negotiated within seven days from date. It was signed by the vice president of the bank, Harlan Dietz. What is important to note is the letter of credit at no place states the duration of a loan of this magnitude, whether a note will be required, what the interest charge will be, and the security the bank would require for the loan.

The letter of credit was admitted into evidence after a preliminary foundation was established by Mr. Dietz, who testified briefly at the very beginning of the trial. On cross-examination Mr. Dietz did not testify what interest would be charged either of the parties to this action on a loan of this magnitude, but he did calculate the interest per annum based upon the bank's *prime rate* of 13% at the time he testified. (Based upon further discussion herein the defendant would not qualify as a prime rate borrower.)

The letter of credit in this case was calculated to support "Plaintiff's Proposed Findings Concerning Alimony and Property." This was clearly a misnomer. Counsel for the defendant objected strenuously and attacked the document as being "evidence of compromise," invading the province of the court, citing K.S.A. 60-452. This document was admitted by the trial court as "Plaintiff's Exhibit No. 16" on January 18, 1983, the day trial commenced. The document first recites that the defendant pay $2,000 per month alimony to the plaintiff until death or remarriage. The document then submits two options for the division of property. Under the first option, the "Plaintiff will pay defendant immediately $700,000 for all real estate (Kansas and Colorado), cattle, farm machinery and mineral interests." Under the second option, defendant would be required to pay plaintiff $250,000 on or before January 20, 1983, plus a judgment of $450,000 payable over a ten-year period with interest at 9% per annum, with the

first payment to be made on or before January 1, 1984, plus interest; the defendant is to be awarded all Kansas real estate, cattle, farm machinery and equipment; the plaintiff is to be awarded one-half of the mineral rights for life; the plaintiff is to be awarded the Pitkin, Colorado, real estate and furniture therein; the plaintiff is to be awarded her 1982 Pontiac Grand Prix; the defendant is to pay all debts incurred by either party to the date plaintiff filed her petition for divorce; plaintiff is to be awarded all household furniture; and plaintiff is to be awarded judgment in the sum of $10,000 to apply toward payment of her attorney fees.

It is abundantly clear from the transcript of the record the first option in the foregoing document for division of property was calculated to induce the court to adopt the second. The plaintiff knew, as the evidence at trial disclosed, that the ranch property in Kansas was the defendant's home from birth; most of it was passed on to him by his parents either without consideration or at a nominal sum. Farming was the defendant's livelihood and the only business he knew. The defendant's son was farming with him and the defendant wanted to continue farming with his son, as he and his father had done, in a partnership arrangement. The defendant testified he did not believe the plaintiff and their son were capable of running the ranch. The plaintiff knew all along that her husband would not willingly part with the ranch for a cash settlement. He so testified. In fact, neither party could sell all the land free and clear because the deed to the home place consisting of three quarters, dated December 3, 1969, specifically set forth a reservation of rights in the defendant's parents, reading:

"RESERVING HOWEVER unto the said Jacob E. Reich and Marie C. Reich and the survivor of them as joint tenants with right of survivorship and not as tenants in common, the right to live in and occupy the residence and any buildings situated in connection therewith situated upon the West Half of the East Half (W/2 E/2) of said Section 22, Township 11, Range 15."

The defendant's mother was 74 years of age at the time of trial and in good health.

Another deed conveying 640 acres to the defendant by his parents reserved to his parents one-half of all minerals and was further made subject to two mineral deeds.

Aside from the propriety of the trial court's ruling which

admitted plaintiff's Exhibits Nos. 16 and 17 in evidence, the options submitted by the plaintiff must be carefully analyzed. Satisfaction of a judgment under either option would require almost the immediate sale of the real property and other farm property when the *dissipation of assets* as a result of tax consequences upon sale is calculated, and consideration is given to current interest charges.

Considering the alternative of borrowing the money as suggested by the letter of credit and the second option will clearly disclose the necessity of sale.

Recent efforts by our Federal Reserve Board to control inflation have escalated interest rates to levels in the past decade far beyond rates theretofore declared usurious by our legislature. Actions appealed to this court where credit was extended by banks to persons in the farm community at the time this action was tried are indicative of interest charges.

In *First Bank of WaKeeney v. Moden*, 235 Kan. 260, 681 P.2d 11 (1984), the Modens were indebted $892,389, a significant portion of which was carried on a note dated January 21, 1982, which had a maturity date in six months, bearing interest at 18%. The remaining indebtedness was secured by a note and mortgage on the land with another bank. This was a foreclosure action by the bank because the Modens were unable to reduce the principal or pay interest due on the note at the periodic six-month renewals of the note. In the past interest was simply added to the principal amount of the loan when the note was renewed.

In *Iola State Bank v. Bolan*, 235 Kan. 175, 679 P.2d 720 (1984), Biggs Feed and Grain, Inc., was indebted on a note dated February 13, 1981, in the amount of $294,000 bearing interest at 17%. The note had been renewed at periodic six-month intervals. The bank determined it was insecure and called the note, applying funds of Biggs Feed and Grain, Inc., deposited in the bank. These funds were received from the sale of grain delivered to it by the farmers. This in turn caused Biggs' checks issued to the farmers, drawn on the bank in payment for the grain delivered, to be dishonored and the lawsuit by the farmers against the bank resulted.

If a loan of $750,000 was effectuated by the Home State Bank in Russell, Kansas, in accordance with the letter of credit admit-

ted into evidence in this case, it is reasonable to assume the bank would require execution of a note, maturing in six months, and bearing interest at 18%. No doubt the bank would require a pledge of all the unencumbered security available to the borrower.

Assuming simple interest on a $750,000 loan at 18% on an annual basis, the loan would require payment of $135,000 interest per annum. Compounded semi-annually the interest payment would be much greater.

What was the income of Dale and Mary Jane Reich from their land holdings and farming operations for the years 1980 and 1981? Their joint federal form 1040 Individual Income Tax Return for 1980 discloses an adjusted gross income of $23,131. Form 1040F for 1980 discloses *a loss* of $22,739. Rents and royalties on Schedule E (Form 1040) discloses total net income of $33,206 and net long-term capital gains on Schedule D (Form 1040) of $21,180.

For the year 1981, the joint federal form 1040 Individual Income Tax Return discloses an adjusted gross income of $3,048. Form 1040F for 1981 discloses *a loss* of $35,015. Rents and Royalties on Schedule E (Form 1040) discloses total net income of $40,883. Net long-term capital gains on Schedule D (Form 1040) are $21,049. These tax returns make it readily apparent, *but for the income from oil royalties,* the farming operations were not profitable.

What the trial court did in its decree dividing the property was to give the plaintiff $500,000 in cash plus one-half of the mineral interests owned by the parties for life, thereby giving her *one-half of the royalty income* in addition to the cash award. The decree also gave her the Pitkin, Colorado, property valued at $60,300. The total value of property given the wife was $645,300 with virtually no tax consequences to her other than taxes on income as it accrued. See *Cady v. Cady,* 224 Kan. 339, 581 P.2d 358 (1978).

The decree setting the ranch holdings over to the defendant obligates him to choose between two alternatives to satisfy the judgment in favor of the plaintiff. One would be to sell land, pay all income taxes, and use the balance to make the cash payments as they became due with 8% interest on the unpaid balance due and owing at annual intervals. The other alternative would be to

borrow the money, as it became due and owing to the plaintiff. Under either choice the farming and ranching operations will terminate.

The income from the farming and ranching operations, despite a substantial cash flow (which includes $105,000 borrowing on notes at the bank in 1982), is marginal at best, particularly if the royalty income is not included. With one-half of the royalty income going to the plaintiff for her life, the ability of the defendant to make sufficient income to service the indebtedness alone would be impossible, where money is borrowed to make the payments due. The defendant testified in answer to a question put to him by his counsel that the ranching operation could not pay a $96,000 interest tab per year (this was *before the decree* awarding one-half of the royalty income to the plaintiff).

Analysis of the defendant's possible choice of borrowing the money to pay the plaintiff in satisfaction of the money award to her goes as follows. The $50,000 indebtedness on the Miller land consisting of 220 acres must be borne by the defendant with the interest payments thereon. Additionally, the judgment in favor of the plaintiff imposed a lien upon all the real estate in the ranch. Any further borrowing by the defendant would be subject to the prior lien of the plaintiff. A loan of $225,000 to make the $200,000 down payment plus the first installment of $25,000 due February 1, 1984, would probably be on a note bearing 18% interest and renewable at six-month intervals in view of the risk factor the bank must assume. The defendant *cannot* put up the land holdings *as a first mortgage,* and the earning history on the ranch is poor, particularly with one-half of the royalty income gone. Annual interest on the $225,000 borrowed would be $40,500. Interest at 8% payable the first year to the plaintiff on the $275,000 in annual installments not yet due is $22,000. In addition the defendant must service the $50,000 indebtedness existing on the Miller land. Annual payments due on the Miller land for the next nine years will be $8,000, for a total interest and principal payable annually of $70,500.

A Federal Land Bank director testified as an expert appraiser of farm land in this case. He testified land values had inflated 100% in the past ten years, but at the time of trial had dropped about 30% from the peak. He testified the effective rate of interest on a Federal Land Bank loan would be 13-13 ¼% on

60-65% of the appraised value of the land depending on the individual's ability to repay the loan *which had to be secured by a first mortgage.*

The defendant admitted in his testimony that his wife had property rights in the ranch, but he indicated a settlement of $450,000 scattered over ten years at 9% interest would force a sale of the ranch, and that a sale of the ranch would have serious tax consequences for him.

An expert for the defendant testified in view of the income history of the ranch that, after operating and living expenses, there was no money remaining for debt service.

If the defendant borrowed the money, at each renewal of the note due the bank the interest would be added to the principal. This would continue until the bank felt it was insecure and result in foreclosure on the collateral pledged for the loan.

In my opinion, either Mr. Reich will voluntarily sell the land holdings and terminate his means of livelihood and that of his son, or will involuntarily be forced to do so through insolvency. This is so because interest charges in the present state of economic affairs in this nation are exorbitant and confiscatory.

Farming and ranching is a business that requires a vast capital outlay to produce income. Evidence in the record that inflation has escalated land values 100% in the past ten years establishes that these land values are unrealistic when viewed in terms of return on capital. This situation has been recognized by the Federal Congress in connection with assessment of estate taxes upon the death of one whose land was used in farming. In this event, the appraised valuation authorized by the IRS is the *use value* of the land, not its market value, in determining the estate taxes payable to the federal government.

It is unlikely that any court would enter a decree in a divorce action involving urban dwellers that deprived one of the parties of their means of livelihood or job. Yet the decree of the trial court here has this precise result. There is no evidence in the record of this trial presented to this court on appeal to show that the defendant can pay the money judgment awarded the plaintiff in this case without terminating the defendant's means of livelihood.

The legislature in 1982 amended K.S.A. 60-1610(*b*)(1) (L. 1982, ch. 152, sec. 9) directing that the trial judge dealing with the

financial matters of the parties to a divorce action take into consideration the "dissipation of assets" in making a division of the parties' property. This statute was made effective January 1, 1983, and was quoted in the court's opinion verbatim. Here the divorce was granted November 23, 1982, the issues of alimony and division of property were heard *January 18, 1983,* and the judgment was journalized February 17, 1983. Therefore, assuming the statute as it presently reads was applicable to this case, the discretion granted the trial court under the statute required that it give due consideration to the dissipation of assets in making a division of property. *Bohl v. Bohl,* 232 Kan. 557, 657 P.2d 1106 (1983); *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982); *Parish v. Parish,* 220 Kan. 131, 551 P.2d 792 (1976), were decided upon this statute before the amendment.

Here the parties were divorced on the grounds of incompatibility. Therefore, both were in equal fault. Nearly all of the land holdings in this case came from the parents of the defendant in the action, and the trial court after awarding one-half of the income from oil royalties to the plaintiff proceeded to decree a division of property that failed completely to take into consideration *the dissipation of assets* resulting from its decree.

Where the decree of a court in making a division of property is arbitrary and the judgment is inequitable it will be set aside. *St. Clair v. St. Clair,* 211 Kan. 468, 499, 507 P.2d 206 (1973). In *Bohl v. Bohl,* 232 Kan. at 566-67, a divorce case resulting in a division of substantial property was remanded to the trial court with the following language:

"The judgment of the trial court is modified consistent with this opinion and the case is remanded to the trial court with directions to conduct a hearing on alternative methods of paying the judgment to Nancy Bohl in the amount of $964,716.50 with special attention to tax consequences, interest on and security for the unpaid balance. This court retains jurisdiction of this case for the purpose of reviewing the findings of the trial court. The judgment of the trial court is affirmed as modified."

In the opinion the court said:

"However, we recognize and acknowledge it would be unfair to require Mr. Bohl to liquidate his company and turn the proceeds over to Mrs. Bohl with nothing left for him. If this were the case it would defeat the trial court's goal of dividing the marital property equally.

"We recognize the validity of appellant's argument as it pertains to the method of discharging the judgment to Nancy Bohl. As previously stated, the amount of

the judgment is well within the evidence and will not be disturbed. However, alternative methods of payment of the judgment giving consideration to the tax consequences thereof deserve further consideration. We find the case should be remanded to the trial court for the limited purpose of receiving evidence and making findings on alternative methods of payment giving consideration to tax consequences, interest on and security for the unpaid balance." 232 Kan. at 565.

What have other states done in divorce cases on divisions of property where farms and ranches comprise the major portion of the property?

Montana cases adopt the premise that the farm or ranch should be kept intact and operating, and that the division of property in a divorce should not force a sale of the ranch or farm. *In re The Marriage of Jacobson v. Jacobson,* 183 Mont. 517, 523, 600 P.2d 1183 (1979); *Biegalke v. Biegalke,* 172 Mont. 311, 314, 564 P.2d 987 (1977); *Hunnewell v. Hunnewell,* 160 Mont. 125, 132, 500 P.2d 1198 (1972).

In *Gomke v. Gomke,* ＿＿ Mont. ＿＿, 627 P.2d 395, 396-97 (1981) the court said:

"That is a policy tied to the economic realities of a predominantly rural state like Montana. Family-run farms and ranches constitute an important part of the state's economy and of its way of life. Many parents wish to pass the family farm or ranch to their children before their death and want to insure the continuity of a family heritage. That understandable desire would be frustrated if the courts of the state were required to sell family farms and ranches as a matter of course in order to effect an 'equitable' property settlement for the spouse who does not wish to remain on the farm after a marriage dissolution."

Iowa courts have a stronger policy of preserving the family farm.

"We have previously recognized the reasonableness of a trial court awarding a farm to the spouse who operated it and in fixing the awards and schedule of payments to the other spouse *without reaching equality* so the farmer-spouse might retain ownership of the farm." (Emphasis added.) *In re Marriage of Callenius,* 309 N.W.2d 510, 515 (Iowa 1981).

See also *In re Marriage of Andersen,* 243 N.W.2d 562, 564 (Iowa 1976); *In re Marriage of Briggs,* 225 N.W.2d 911, 913 (Iowa 1975).

Iowa courts will approve substantial disparity in property division despite stated goals of equality if the principal asset of the parties is farmland which was a major source of the parties' livelihood because "the desirability of preserving this asset

widened the range of acceptable departure from approximate equality of property division." *In re Marriage of Conley,* 284 N.W.2d 220, 223 (Iowa 1979).

In a recent Nebraska case it was stated:

"In an action for dissolution of marriage, the property should be divided, if possible, in such a manner as to permit the husband to retain the means for payment of any judgment awarded to the wife." *Michal v. Michal,* 207 Neb. 757, 301 N.W.2d 100 (1981).

Noting these foreign cases, consider the decree entered by the trial court in this case.

1. The down payment in this case is 40% of the cash award.
2. There is no evidence to indicate a resource available for sale other than the ranch itself.
3. The annual payments of cash are not deductible to the defendant for tax purposes as they would be had alimony been awarded.
4. There is no evidence to indicate an income is available to make the payments. The defendant cannot sell land, cattle or machinery without destroying his ability to produce income.
5. After the initial payment of $200,000 the time in which to pay the balance in installments is relatively short.
6. The plaintiff is receiving an approximate 50% share of the assets virtually tax free even though the bulk of the property came from gifts from the defendant's parents, and the defendant managed and operated the business. Considering the dissipation of assets awarded the defendant, the plaintiff gets the lion's share.

Cases in which this court has discussed tax consequences of a division of property in divorce cases are *McCain v. McCain,* 219 Kan. 780, 784, 549 P.2d 896 (1976); *Almquist v. Almquist,* 214 Kan. 788, 522 P.2d 383 (1974); *Drummond v. Drummond,* 209 Kan. 86, 495 P.2d 994 (1972); *Small v. Small,* 207 Kan. 506, 509, 485 P.2d 1365 (1971).

It is respectfully submitted the trial court abused the exercise of its power of discretion in its decree dividing the property of the parties. I would remand the case to the trial court with directions to hear expert testimony directed toward the dissipation of assets resulting from (1) a sale of the real property, and (2)

the interest charges necessitated in borrowing the funds to pay an award of money to the plaintiff, and that the trial court modify the award accordingly. See *Cook v. Cook,* 231 Kan. 391, 646 P.2d 464 (1982). In my opinion, the letter of credit and the manner in which it was used in connection with "Plaintiff's Proposed Findings Concerning Alimony and Property," offered by the plaintiff and *admitted as an exhibit by the trial court* over defendant's strenuous objection, was highly prejudicial to the defendant. I would direct upon reconsideration of the case the trial court ascertain what influence, if any, the impending marriage of the plaintiff to Wendall M. Doonan, just prior to the January 18, 1983 hearing, had upon the Home State Bank of Russell when the letter of credit was issued on January 17, 1983. The brief filed by the defendant discloses the plaintiff remarried shortly after the hearing on January 18, 1983. Her new husband is the president and a director of Doonan Truck and Equipment, Inc., of Great Bend, Kansas. Judicial notice can be taken of the corporate annual report filings of this domestic corporation in the office of the Secretary of State of Kansas.