■  In the Matter of HOWARD LESTER, as a Surviving Partner, for the Winding Up of EMILE Z. BERMAN and A. HAROLD FROST, a Partnership. EMILE Z. BERMAN, Petitioner; HOWARD LESTER et al., Respondents.—In this submission of a controversy upon an agreed statement of facts pursuant to CPLR 3222, it is directed that judgment be entered in the Supreme Court, New York County, declaring that the first sentence of paragraph 2 of the agreement between Emile Z. Berman and Berman & Frost, dated November 29, 1972, entitles Emile Z. Berman to a pro rata share of the three groups of partnership assets described in paragraph numbered 4 of the submission herein, without costs or disbursements. The parties submit a controversy upon an agreed statement of facts by which they seek to resolve a dispute as to the interpretation of the first sentence of paragraph 2 of the agreement entered into between Berman and the law partnership of Berman & Frost under which Emile Z. Berman withdrew as a partner. Paragraph 2 reads: "As soon as possible after January 1, 1973 the firm will pay Berman his share of capital and of the firm's net tangible assets, as determined by an audited statement." Berman contends that the term "net tangible assets" entitles him to a pro rata share of accounts receivable for services billable as of December 31, 1972, regardless of whether payment for such services was received prior or subsequent to December 31, 1972 and that he is entitled to a pro rata share of those moneys advanced by the partnership to clients prior to and as of December 31, 1972 and repaid upon the conclusion of respective cases subsequent to December 31, 1972. The partnership argues that the term "net tangible assets" refers only to the net value of tangible fixed assets and does not embrace accounts receivable or repaid moneys previously loaned by the partnership. Under the agreement, Berman was to receive $50,000 per year for five years, $15,000 per year for an additional five years, and his share of capital and net tangible assets. Berman received $1,569 for his share of capital and only $7,500 for *"fixed assets."* If Berman were to die during the initial five-year period, his estate would receive only one half of the amounts provided for. Berman possessed a 21% interest in the partnership worth, at his retirement, some $700,000. Assuming Berman did not die, under the partnership's reasoning he bargained his interest away for payments totaling some $334,000. This amount was tied in with a death gamble, i.e., if Berman died, the sum would be halved. Mr. Frost died in the interim. We assume that these knowledgeable attorneys intended a just arrangement. The business of a law firm is the practice of law, i.e., the performance of legal services. When the partnership was ongoing, their

fiscal affairs were on a cash basis. However, the dissolution of the partnership upon the retirement of a partner is a patently different situation. The parties agreed that the "net tangible assets" were to be determined by an audited statement. It is unlikely that they merely intended that Berman be assured by accountants that he receive his pro rata share of the appraised value of fixed assets, such as typewriters, bookcases, cabinets and books. Such view would not accord with the realities of partnership dissolution. A law partnership not only possesses fixed assets in the form of typewriters, bookcases, etc., it possesses assets in the form of cases and legal matters. Upon the dissolution these assets necessarily include the partnership's uncollected fees and the moneys advanced for clients' accounts with respect to services completed prior to the date of dissolution, whether billed or billable. As aptly noted by the Court of Appeals in *Jackson v Hunt, Hill & Betts* (7 NY2d 180, 183): "In the absence of a formal partnership agreement, upon the retirement of a partner, the firm would have to be dissolved and, when uncollected fees had been paid, they would have to be collected for the benefit of the members of the firm in liquidation. From this it follows that unless this partnership agreement established a different relationship between the partners, plaintiff . . . is entitled to what he would have received on dissolution and winding up under the Partnership Law. He would *not be* divested of these participations by a partnership contract which was obscure or which conferred upon him similar property rights to those which he would have possessed in the absence of a formal agreement." Concur—Lupiano, J. P., Fein, Lane, Markewich and Sandler, JJ. [87 Misc 2d 717.]