No. 53,458

DOROTHY MAY POWELL, *Appellant,* v. BENSON M. POWELL, II, *Appellee.*

(648 P.2d 218)

Opinion filed June 11, 1982.

*Danton C. Hejtmanek,* of Jones, Schroer, Rice, Bryan & Lykins, Chartered, of Topeka, argued the cause and was on the brief for the appellant.

*Malcolm G. Copeland,* of Topeka, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

HERD, J.: Dorothy Powell appeals from the trial court's order

granting a divorce to Ben Powell and dividing the marital property.

Dr. Ben Powell and Dorothy Blair were married September 3, 1949. At that time Ben had completed medical school and commenced his residency at Kansas City Research Hospital. Dorothy worked for most of the first years of the marriage. Ben became the major breadwinner of the family when he entered the Air Force in 1953. The couple raised six children, all of whom were adults at the time of trial. Due to Ben's long working hours as a surgeon, the majority of the child-rearing duties fell upon Dorothy.

The thirty-one years of the Powells' marriage were not without their problems. According to Dr. Powell, marital difficulty began when the honeymoon ended. He testified Mrs. Powell was extremely suspicious and would frequently call him in the evenings while he was at the hospital. There were physical altercations several times during the marriage. According to Dr. Powell these were the result of the need to restrain Mrs. Powell when she became irrational. Mrs. Powell testified her husband's uncontrollable anger precipitated these episodes. Dr. Powell's concern over his wife's behavior even led him to dispose of all the firearms in the house.

The strain in the Powells' marriage came to a head in January of 1980. One night, early in the month, Mrs. Powell threw her husband out of the house. He came back for a short period of time but moved out permanently on January 20, 1980.

Mrs. Powell filed for separate maintenance April 24, 1980. Dr. Powell cross-petitioned for divorce on the grounds of incompatibility. On May 11, 1981, the court granted an absolute divorce and took the issues of property division and alimony under advisement.

Mrs. Powell is a registered nurse. She has a bachelor of science degree and a master's degree in Adult and Occupational Education. She worked during the early years of the marriage and after her children began to get older she held various part-time jobs including teaching at Stormont-Vail Hospital and Clark's Business School in Topeka. In 1970 she began working as her husband's scrub nurse. This relationship terminated in 1977. Since Dr. Powell left the home Mrs. Powell has made sporadic attempts at finding employment. She claims no one will hire her because of her age, 57 at the time of divorce, and lack of experience. Dr. Powell continued to pay her a monthly allowance until the court made an alimony award.

Dr. Powell was 54 at the time of the divorce. In 1955 he joined his father in surgical practice in Topeka. Since that time he has become a respected member of his profession and has built a successful practice in thoracic and vascular surgery. He is recognized as a knowledgeable doctor and a skilled surgeon. His adjusted gross income for 1979 was $99,204.00.

During the marriage the Powells acquired a considerable amount of property. The marital property included two houses in Topeka, bank and savings accounts in institutions in Topeka and Arizona, numerous stock, bonds and investments assets, Dr. Powell's medical practice, one-half interest in the Vascular Diagnostic Center of Topeka (VDCOT), one-half interest in the Broadway Professional Plaza in Tucson, Arizona, one-half interest in the Glenn East Apartments in Tucson, Arizona, and an interest in Halric, Inc., which counted an airplane as its only asset. In addition to the liabilities of the Broadway Plaza, the Glenn East Apartments and the Halric corporation, Dr. Powell had borrowed approximately $171,900.00 from his retirement funds to allow him to make investments. He was paying this debt off at the rate of $1,702.00 per month.

After taking the matter under advisement the trial court, on June 12, 1981, reached the following property division:

"TO DR. BEN POWELL

| | |
|---|---|
| Medical practice, equipment, accounts, pension, profit sharing | $105,000.00 |
| VDCOT | 7,000.00 |
| Energy Investments | 2,692.00 |
| Home on Pennsylvania [St.] | 10,000.00 |
| Halric | 2,000.00 |
| Glenn East Apartments (his share) | 250,000.00 |
| One-half Broadway Plaza (his share) | 61,250.00 |
| Topeka Country Club | 6,750.00 |
| Flight simulator | 1,000.00 |
| TOTAL | $445,692.00 |

TO DOROTHY POWELL

| | |
|---|---|
| Home on Mulvane | $ 90,000.00 |
| Furnishings, appurtenances, appliances and contents | 10,000.00 |
| Cash and savings accounts with Postal Savings | 3,700.00 |
| Stocks, bonds and investment assets | 28,260.00 |
| One-half Broadway Plaza (her share) | 61,250.00 |
| | $193,210.00" |

The court ordered Dr. Powell to pay costs of the litigation, including $5,000.00 to Mrs. Powell's attorney, along with all current bills and expenses of the parties. Alimony was awarded to Mrs. Powell beginning with $1,500.00 per month from 1981 to 1983, then decreasing to $1,200.00 per month from 1983 to 1985; $900.00 per month from 1985 to 1987 and finally $600.00 per month from 1987 to 1989, for a total sum of $100,800. Division of the personal property of the parties is not in dispute except for Mrs. Powell's claim the household furniture was overvalued.

Appellant first attacks the trial court's division of the marital property. K.S.A. 1981 Supp. 60-1610(d) provides:

"The decree shall divide the real and personal property of the parties, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage, or acquired by their joint efforts, in a just and reasonable manner, either by a division of the property in kind, or by setting the same or a part thereof over to one of the spouses and requiring either to pay such sum as may be just and proper, or by ordering a sale of the same under such conditions as the court may prescribe and dividing the proceeds of such sale."

The judicial rules governing division of property pursuant to divorce are well settled.

"In determining a just and reasonable division of property, the trial court should take into consideration the following factors: (1) The ages of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) the time, source and manner of acquisition of property; (6) family ties and obligations; (7) the question of fault when determined; and (8) the allowance of alimony or lack thereof." *Parish v. Parish,* 220 Kan. 131, 133-34, 551 P.2d 792 (1976).

See also *LaRue v. LaRue,* 216 Kan. 242, 250, 531 P.2d 84 (1975); *Smith v. Smith,* 5 Kan. App. 2d 117, 119, 612 P.2d 1257 (1980).

"In a divorce action the district court is vested with broad discretion in adjusting property rights, and its exercise of that discretion will not be disturbed on appeal absent a clear showing of abuse." *Downing v. Downing,* 218 Kan. 549, 542 P.2d 709 (1976). See also *LaRue v. LaRue,* 216 Kan. at 249; *Almquist v. Almquist,* 214 Kan. 788, 791, 522 P.2d 383 (1974)..

"[D]iscretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion." *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973); *Downing v. Downing,* 218 Kan. at 550; *Almquist v. Almquist,* 214 Kan. at 791.

Measured against the foregoing standards, it is clear there was no abuse of discretion. When the alimony award is deducted from that portion of the property set aside to Dr. Powell and added to Mrs. Powell's portion the trial court's attempt at fairness is obvious. Although some might have divided the property differently it cannot be concluded the trial court abused its discretion.

As noted, the trial court awarded Mrs. Powell alimony on a declining scale beginning with $1500 per month in 1981 and terminating in 1989. The total alimony award, assuming Mrs. Powell does not die or become remarried during that period, was $100,800. Appellant claims the maintenance award was insufficient to meet her needs.

K.S.A. 1981 Supp. 60-1610(e) states: "The decree may award to either party an allowance for future support denominated as alimony, in such amount as the court shall find to be fair, just and equitable under all of the circumstances."

Again, the judicial considerations regarding alimony are well settled. They were capsulized in *Williams v. Williams,* 219 Kan. 303, 306, 548 P.2d 794 (1976):

"Fault is but one element which may be considered in fixing alimony. Other matters which may be considered include the age of the parties, their present and prospective earning capacities, the length of the marriage, the property owned by them [citation omitted], the parties' needs [citation omitted], the time, source and manner of acquisition of property, the family ties and obligations [citation omitted], and the parties' overall financial situation [citation omitted]. There is no fixed rule on the subject and the district court in a divorce action is vested with wide discretion in adjusting the financial obligations of the parties. Thus, its exercise of that discretion will not be disturbed on appeal in the absence of a showing of clear abuse."

See also *Parish v. Parish,* 220 Kan. at 134.

The court heard evidence Mrs. Powell was capable of earning between $14,000 and $22,000 per year. The chronic shortage of nurses was also mentioned. Further, Dr. Powell's take-home pay was approximately $4700 per month. Out of this he had to pay $1500 per month alimony. We find no abuse of discretion.

Similarly, there is no basis to appellant's claim the trial court erred in excluding evidence of fault relative to its determination of alimony. Our review of the record reveals no improper exclusion of evidence regarding the fault of the parties.

Appellant next contends the trial court should have placed a "good will" value on Dr. Powell's medical practice and made a cash award to her accordingly. The trial court considered the matter and concluded the alimony and property settlement awarded Mrs. Powell was sufficient.

In *Avery v. City of Lyons,* 183 Kan. 611, 621, 331 P.2d 906 (1958), this court discussed "good will":

"Good will is property. It may be sold and it may be damaged. [Citation omitted.] The chief elements of good will are continuity of place and continuity of time. [Citation omitted.] Good will means an established business at a given place with the patronage that attaches to the name and the location. It is the probability that old customers will resort to the old place."

More recently, and in a context closer to the case at bar, the New Jersey court stated:

"The usual classic definition of good will is that of Mr. Justice Story, cited in *In re Ball's Estate,* 161 App. Div. 79, 146 N.Y.S. 499 (App. Div. 1914):
'Good will may be properly enough described to be the advantage or benefit which is acquired by an establishment beyond the mere value of the capital, stock, funds, or property employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers, on account of its local position or common celebrity, or reputation for skill or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partialities or prejudices.' "
*Levy v. Levy,* 164 N.J. Super 542, 549, 397 A.2d 374 (1978).

Under the more narrow definition of good will, it was thought good will could only exist in a commercial enterprise and not in a professional business, such as a medical practice, which depended on the personal skill of and confidence in a particular person. 38 Am. Jur. 2d, Good Will § 8, p. 916. For example, in *Nail v. Nail,* 486 S.W.2d 761, 764 (Tex. 1972), it was held the good will of the medical practice of the husband "did not possess value or constitute an asset separate and apart from his person, or from his individual ability to practice his profession." Other courts, including this one, have held good will may exist as an intangible but valuable property in a professional practice or in a business founded on personal skill or reputation. *Mills v. Cleveland,* 87 Kan. 549, 555, 125 Pac. 58 (1912). See also 38 Am. Jur. 2d, Good Will § 8, pp. 916-17.

The differing views of professional good will become most evident in divorce cases, when the existence of good will may have an important effect on the division of marital property and

the decree of alimony. Some jurisdictions hold professional good will is not a marital asset to be divided at divorce (*Nail v. Nail,* 486 S.W.2d 761; *Holbrook v. Holbrook,* 103 Wis. 2d 327, 309 N.W.2d 343 [Ct. App. 1981]), while others who have dealt with the question hold good will should be included in the marital property subject to division. *In re Marriage of Fleege,* 91 Wash. 2d 324, 588 P.2d 1136 (1979); *Goger and Goger,* 27 Or. App. 729, 557 P.2d 46 (1976); *In re Marriage of Nichols,* 43 Colo. App. 383, 606 P.2d 1314 (1979); *Nastrom v. Nastrom,* 262 N.W.2d 487, 493 (N.D. 1978). The latter doctrine is well established in California. See Lurvey, *Professional Good Will on Marital Dissolution: Is it Property or Another Name for Alimony?* 52 Cal. St. Bar J. 27 (1977).

The question of whether this court should adopt the theory that good will of a professional practice is a marital asset to be divided at divorce is, in the final analysis, a public policy issue. In *In re Marriage of Nichols,* 43 Colo. App. at 385, the Colorado appeals court cited the reasons in favor of such a holding:

"Professional practices that can be sold for more than the value of their fixtures and accounts receivables have salable goodwill. A professional, like any entrepreneur who has established a reputation for skill and expertise, can expect his patrons to return to him, to speak well of him and upon selling his practice, can expect that many will accept the buyer and will utilize his professional expertise. These expectations are a part of goodwill, and they have a pecuniary value. [Citation omitted.] While we recognize that professional goodwill is not an asset which has an independent market value, it can, in conjunction with the assets of the practice, be sold. This limited marketability distinguishes professional goodwill from the advanced educational degree, which, because it is personal to its holder and is non-transferable, was held not to be property in *Graham,* [194 Colo. 429, 574 P.2d 75 (1978)]."

The Wisconsin Court of Appeals, in *Holbrook v. Holbrook,* 103 Wis. 2d at 350-51, provided the rationale for the opposite view:

"We are not persuaded that the concept of professional goodwill as a divisible marital asset should be adopted in Wisconsin. We are not obligated nor inclined to follow the twisted and illogical path that other jurisdictions have made in dealing with this concept in the context of divorce.

"The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what its goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earnings in the future. It cannot

be *separately sold or pledged by the individual owners.* The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

. . . . .

"Like an educational degree, a partner's theoretical share of a law firm's goodwill cannot be exchanged on an open market; it cannot be assigned, sold, transferred, conveyed or pledged. Although we recognize the factual distinction between a degree-holder and a partner or shareholder in a law firm, we think the similarities compel analogous treatment in a divorce setting. In both cases, the 'asset' involved is not salable and has computable value to the individual only to the extent that it promises increased future earnings.

"There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value."

We are not persuaded a professional practice such as Dr. Powell's has a good will value. The practice is personal to the practitioner. When he or she dies or retires nothing remains. The professional's files and lists of clients are of no use to others. The very nature of a professional practice is that it is totally dependent upon the professional. We refuse to adopt the theory that good will in a professional practice is an asset subject to division in a divorce action. The issue is without merit.

Dr. Powell was required to pay $5,000 in attorney fees to Mrs. Powell's counsel, Dan Hejtmanek. He was also charged with costs and expenses of the litigation. Mrs. Powell was required to pay a $1312.50 fee to Charles Fisher, who withdrew from the case, and any fees to Mr. Hejtmanek over $5,000. Appellant maintains the trial court erred in making this determination.

K.S.A. 1981 Supp. 60-1610($h$) states:

"Costs and attorneys' fees may be awarded to either party as justice and equity may require."

The rules regarding the award of attorney fees in cases such as this were summarized in *Dunn v. Dunn,* 3 Kan. App. 2d 347, 348, 595 P.2d 349 (1979):

"Pursuant to this statute [K.S.A. 1981 Supp. 60-1610($h$)], the district court is vested with wide discretion to determine both the amount and the recipient of an allowance of attorney fees. [Citation omitted.] Upon review of an award of attorney fees, the appellate court does not reweigh the testimony or evidence presented nor reassess the credibility of witnesses. [Citation omitted.] The trial judge is considered an expert in determining attorney fees [citation omitted]; and an attorney fee award will not be set aside on appeal when supported by substantial competent evidence. [Citation omitted.] However, '[w]here the exercise of discretion is arbitrary and not judicial, and the judgment is inequitable, it will be set aside.'"

The only evidence before the court regarding attorney fees was a list of services provided by Mrs. Powell's attorney. Since the trial court is considered an expert on the matter it cannot be said there was an abuse of discretion.

Appellant next contends the trial court erred in failing to comply with the requirements of K.S.A. 1981 Supp. 60-1610(*i*). That statute states:

"Every decree of divorce shall contain a provision to the effect that the parties are prohibited from contracting marriage with any other persons until 30 days after the entry of the decree and, if an appeal is taken, until the receipt of the mandate issued in accordance with subsection (*c*) of K.S.A. 60-2106. Any marriage contracted before the expiration of that period shall be null and void, and any agreement to waive the right of appeal shall not be effective to shorten such period of time."

Here the decree of divorce was entered on a judgment form filed May 15, 1981. The judgment form did not state the provisions regarding remarriage as required by K.S.A. 1981 Supp. 60-1610(*i*). After the court made its determination regarding matters of property division and alimony a "Journal Entry of Divorce" was filed. The Journal Entry fully complied with the statute in question.

Appellee contends this court has no jurisdiction over the question of the propriety of the divorce because the judgment of divorce was not appealed until more than thirty days after its entry. K.S.A. 60-2103(*i*) states:

"When an appeal or cross-appeal has been timely perfected the fact that some ruling of which the appealing or cross-appealing party complains was made more than thirty (30) days before filing of the notice of appeal shall not prevent a review of the ruling."

Thus, in a divorce action both the divorce and division of property may be appealed at the same time even though the divorce may have been granted more than thirty (30) days before the filing of the notice of appeal. *McCain v. McCain,* 219 Kan. 780, 783, 549 P.2d 896 (1976).

Here no reversible error is shown. Admittedly the judgment form which was initially filed did not technically comply with K.S.A. 1981 Supp. 60-1610(*i*). Whatever possible error existed, however, was corrected by the trial court's subsequent filing of the journal entry which stated the prohibitions contained in

K.S.A. 1981 Supp. 60-1610(*i*). The purpose of the statute, to inform the parties that any marriage contracted within the time period ·mentioned is null and void, was thus served.

Appellant's final contention is that the trial court erred in granting the cross-petition for divorce on the grounds of incompatibility when she sought only separate maintenance. Both the petition for separate maintenance and the cross-petition for divorce alleged incompatibility. Thus, there was agreement between the parties on that issue. All that remained was for the trial court to determine whether divorce or separate maintenance was appropriate. In a case such as this, where one party requests separate maintenance and the other party asks for divorce, the trial court must have some discretion in determining how the interests of the parties and the public welfare are best served. *Berry v. Berry,* 215 Kan. 47, 51, 523 P.2d 342 (1974). Here it is obvious the trial court did not abuse its discretion. ·

The judgment of the trial court is affirmed.

FROMME, J., not participating.