*In re* MARRIAGE OF MYRA JOYCE ZELLS, Petitioner-Appellee, and MARTIN B. ZELLS, Respondent-Appellant (Beermann, Swerdlove, Woloshin, Barezky & Berkson, Appellee).

First District (1st Division)   Nos. 1—89—0143, 1—88—0622 cons.

Opinion filed March 19, 1990.—Rehearing denied May 25, 1990.

Joel S. Ostrow, of Chicago, for appellant.

Melvyn H. Berks, of Des Plaines, for appellee Myra Zells.

JUSTICE O'CONNOR delivered the opinion of the court:

On December 14, 1987, the marriage of Myra and Martin Zells was dissolved and the marital property divided. Both parties appeal, arguing that the division of property was inequitable. For the reasons below, we affirm in part and reverse and remand in part.

Myra, age 46, and Martin, age 48, were married on August 30, 1964, and separated in May 1983. The parties have two children, both of whom are now adults. Mrs. Zells, who has no significant experience in work outside the home, attended one year of college before she was married and was a homemaker during the course of the marriage. Mr. Zells is an attorney with his own private practice. He suffered a heart attack in March 1984, and the related problems and high blood pressure, exacerbated by stressful divorce proceedings, have forced him temporarily to reduce the number of hours he devotes to his law practice.

After protracted proceedings, characterized by the trial court as "a three ring circus," a judgment for dissolution of marriage was entered. The provisions and rulings that the parties challenge are summarized below.

Two experts testified to the value of Zells' law practice. Mrs. Zells' expert, Burton Babtech, gave valuations for the goodwill asset ranging from $66,000 to $131,000, and believed the higher figure to be more accurate. He valued the entire practice at $150,000. Zells' expert, Jerald Richman, valued the tangible assets of the practice at approximately $25,000, and stated that the practice had no goodwill because 50% to 60% of the business came from two clients who stated that they would not stay with the practice if it was sold. Outlining its calculations in the judgment for dissolution, the trial court valued

Zells' law practice at $92,010, of which $77,000 was goodwill. The law practice was awarded to Zells.

The trial court included several minor contingent fee cases in the value of the law practice, but specifically excluded two major contingent fee cases. Only one case now remains. The trial court ruled that due to the speculative nature of the fees, to prevent one party from receiving a "windfall," the parties would share the contingent fees equally if and when they were paid.

The parties owned one-half interest in a condominium in Florida, with the other half owned by Mrs. Zells' father, Sam Solomon. At trial, Mr. Solomon testified that the condo was worth $52,000, while Zells testified that the condo was worth $70,000, based on a brokerage agreement. The trial court found Mr. Solomon's testimony more reliable, as he had greater familiarity with the property, and set the value at $52,000. The parties' interest of $26,000 was awarded to Mrs. Zells.

On March 28, 1984, the trial court had issued an order to modify the temporary maintenance and child support, retroactive to March 21, 1984. Hearing on modification was deferred until further discovery, but no hearing was ever held. Based on the orders entered, and the need for child support and maintenance, the trial court ruled that it had authority to modify the temporary maintenance in the judgment for dissolution. The trial court found that the difference between the reasonable amount of maintenance, and the amount Zells actually paid, from April 1, 1984, to April 1, 1987, was $5,250, and ordered Zells to pay that amount to Mrs. Zells.

The marital home was encumbered with a mortgage of approximately $36,000 in July 1984, which was the last time a mortgage payment was made. As a result of the parties' failure to pay, the mortgage went into foreclosure. Mr. Solomon bought the mortgage for $43,000, and paid the foreclosure costs and property taxes for 1984. The trial court found that Mrs. Zells, who was under court order to pay the mortgage out of her maintenance, stopped paying the mortgage in July 1984, while she was receiving support. The court also found that at the same time, Zells had reduced the support payments from $500 per week to $250 per week. Accordingly, the trial court found that the failure to pay the mortgage was the fault of both parties, and ordered both to reimburse Mr. Solomon the cost of the purchase of the mortgage plus 9% simple interest from the date of closing, plus the closing costs and the 1984 taxes.

Zells' sister, Evette, worked for him as an attorney. Beginning in 1985, until May 1, 1986, Zells paid Evette by checks which she did

not cash. But on March 13, 1986, Evette deposited the checks, totaling approximately $16,000, and wrote a check for that amount to Zells, which he never endorsed. The trial court found that any outstanding debt to Evette was satisfied by the transfer of Zells' boat to her, and that there was no marital debt to Evette.

Before the action for divorce was filed, the parties' children had a bank account with $26,000. An order on May 10, 1984, gave Mrs. Zells leave to withdraw $500 from the account. On May 29, 1984, a second order lifted any and all restraints on Mrs. Zells to withdraw money from the account for the children's expenses, to the immediate extent of $7,500. Subsequently, Mrs. Zells withdrew a total of $26,000 from the account, which she testified was used to pay the children's expenses. The trial court found that the money was reasonably used during the course of the divorce proceedings and ordered the parties to each repay half of the $26,000.

The trial court found that although a maintenance award to Mrs. Zells of $2,000 to $3,000 per month would have been appropriate, given the lifestyle the couple had maintained during the marriage, Zells' present monthly income was approximately $3,000 before taxes and payments of court-ordered insurance. The trial court awarded Mrs. Zells $250 per week in maintenance, reviewable on June 1, 1988, and again in six years.

The division of property awarded approximately $194,000 to Mrs. Zells, and approximately $224,000 to Mr. Zells. The trial court stated that it had attempted to divide the marital property equally, and that the difference was due primarily to the nonliquid nature of the assets that were awarded to Mr. Zells.

After trial, Mrs. Zells' counsel presented a petition for fees and costs, seeking an award against both parties. Mrs. Zells opted to represent herself in the hearing on attorney fees, which generated almost 1,000 pages of transcripts. Her attorney fees amounted to $50,000. The trial court found that the amount of the fees was reasonable, and ordered Mrs. Zells to pay $42,000 of the fees, while Zells was ordered to pay the remaining $8,000.

In a post-judgment hearing on December 14, 1987, Mrs. Zells stated: "[My attorney] told me that for three years if I went to work he was going to withdraw from this case. He threatened me and told me I was going to ruin my case if I went to work." On January 4, 1988, Zells filed a notice of appeal. On January 13, 1988, Zells filed motions for rehearing and for sanctions based on Mrs. Zells' statement in the December 14 hearing. The trial court dismissed the motion for sanctions and ruled that the notice of appeal divested it from

jurisdiction to reconsider the judgment. Zells filed a notice of appeal from those rulings on February 24, 1988.

■ The parties challenge the factual findings and orders discussed above, but the record supports the trial court. The trial court found that the length of the marriage and the parties' respective contributions to the marriage justified an equal distribution of the marital assets. The distribution of the marital assets was supported by the record, and the trial court discussed and detailed its findings and rulings in the judgment for dissolution. We find no abuse of discretion and therefore affirm.

■ Both parties challenged the maintenance award of $250 per week, but the award reflected the trial court's consideration of the factors set forth in section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 504), and balanced Zells' ability to pay against Mrs. Zells' reasonable monthly expenses and the expectation that she would become self-supporting. The maintenance award, and its reviewability, were reasonable and will not be disturbed. Zells' post-judgment motions for rehearing and for sanctions were filed after he filed his notice of appeal, and the trial court properly ruled that it had no jurisdiction. *Cain v. Sukkar* (1988), 167 Ill. App. 3d 941, 521 N.E.2d 1292; *Dunn v. Dunn* (1979), 71 Ill. App. 3d 649, 390 N.E.2d 136.

■ Mrs. Zells argues that requiring her to pay $42,000 of the fees was error, given the disparity in the earning potential of the parties. Generally a party must pay his or her own attorney fees. (*In re Marriage of Pahlke* (1987), 154 Ill. App. 3d 256, 507 N.E.2d 71; *In re Marriage of Weinberg* (1984), 125 Ill. App. 3d 904, 466 N.E.2d 925.) Here, any disparity in the economic positions of the parties was not so great or permanent as to relieve Mrs. Zells of the obligation of her attorney fees. The division of marital property was equitable and approximately equal, the difference due primarily to debts that Mrs. Zells was ordered to pay, which are not appealed, and to Zells receiving the law practice, which was not a liquid asset. The record further supports the expectation that Mrs. Zells will be able to become self-supporting. The trial court did not err, therefore, in requiring Mrs. Zells to pay the largest share of her own attorney fees.

We find, however, that the trial court erred in separating the major contingent fees from the value of the law practice and dividing them between the parties, because in so doing, the trial court implicitly treated the fees as marital assets. But the nature of contingent fees indicates that they were assets of neither the marital estate nor the law practice.

No Illinois court has specifically determined whether contingent fees should be considered marital assets. The issue has been addressed only in Louisiana and Wisconsin, both of which are community property States. Contingent fees are designated "community assets" by statute in Louisiana (see *Due v. Due* (La. 1977), 342 So. 2d 161; *Pellerin v. Pellerin* (La. App. 1989), 550 So.2d 1250), valued by the amount of services rendered before the dissolution of the marriage. In a related context, *Bader v. Cox* (Tex. App. 1986), 701 S.W.2d 677, held that contingent fees were assets of a dissolved partnership with a present value determined by the value of services rendered before the dissolution, but that ruling was supported by cases dealing with receivables with a known value. (*E.g., In re Lester* (N.Y. App. Div. 1978), 61 A.2d 935, 403 N.Y.S.2d 33 (accounts receivable); *Balfour, Guthrie & Co. v. Hansen* (1964), 227 Cal. App. 2d 173, 38 Cal. Rptr. 525 (causes in action).) Wisconsin has indicated that contingent fees are marital assets (see *Weiss v. Weiss* (1985), 122 Wis. 2d 688, 365 N.W.2d 608), but a later unpublished opinion, *Holgate v. Holgate* (1987), 139 Wis. 2d 856, 407 N.W.2d 566, stated that the trial court had discretion to treat contingent fees as either marital assets or income subject to support and maintenance. Thus, while the treatment of contingent fees appears unsettled, their value is acknowledged.

■ Three factors lead to the conclusion that contingent fees are not marital assets. First, the nature of a contingent fee contract indicates that an attorney has neither the right to receive the fee until the case is disposed of, nor any assurance that he ever will receive the fee. Second, the amount of the contingent fee depends on the amount of the award or settlement in the case; therefore, its ultimate value, if any, remains highly speculative during the pendency of the case. Here, for example, expert witnesses for both parties testified that while Zells' contingent fee cases were potentially quite valuable, they were also potentially worthless. Third, the worth of a contingent fee to an attorney, if any, remains intangible until the firm receives cash or other consideration for the services rendered.

■ Given the intangibility of a contingent fee, its unascertainable and speculative value, the aleatory nature of the right to receive it and the uncertainty of collection, we conclude that a contingent fee cannot be considered an asset of either the marital estate or of the law practice from which it is derived. Rather, a contingent fee represents merely the unenforceable expectation of future income. Accordingly, the trial court erred in treating the contingent fees as assets and awarding Mrs. Zells any share of the future income.

We recognize, however, that the contingent fees, although neither

assets nor divisible, had value to both parties, a value analogous to an investment in the law practice. By incurring expenses attributable to the contingent cases, Zells increased the likelihood of receiving future income. Thus, the expenses were comparable to an investment, which Zells received when he was awarded the law practice.

But to the extent that the law practice incurred expenses attributable to the contingent cases, the net income, and therefore, the net worth of the practice, was reduced. Zells was awarded the law practice, and the marital property that Mrs. Zells received to match the value of the law practice was reduced by the amount of the expenses. Zells received the investment, but Mrs. Zells received no property of corresponding value.

For purposes of the dissolution, no ultimate value can be placed on the contingent fees, but their present value is represented by the expenses incurred before the dissolution. Here, there was no determination of how much Zells spent on the contingent cases before the dissolution, but we assume that economic necessity balanced the expenses against Zells' estimate of the probability of success and the expected amount of recovery. Since Zells received the value of the investment and its yield in the form of future income, Mrs. Zells must receive the present value of the investment, which is an amount equal to the expenses attributable to the contingent cases prior to dissolution.

We need not address Zells' argument that sharing the contingent fees with a nonattorney violated rules of ethics. We note, however, that to accept Zells' argument might necessarily require barring attorneys' spouses from receiving a share of any assets or income derived from legal fees. The difficulties with such a rule are patent.

In summary, we affirm the trial court's findings of fact and distribution of marital property. We further affirm the maintenance award, the dismissal of Zells' post-judgment motions, and the allocation of payment of Mrs. Zells' attorney fees. We reverse the trial court's ruling with respect to the contingent fees, however, and remand with instructions to determine the expenses attributable to the remaining contingent fee case prior to the dissolution, and to award Mrs. Zells an amount of marital property equal to that amount.

Affirmed in part; reversed in part and remanded with instructions.

CAMPBELL and MANNING, JJ., concur.