(No. 70419.—

*In re* MARRIAGE OF MYRA JOYCE ZELLS, Appellant, and MARTIN B. ZELLS, Appellee.

*Opinion filed April 18, 1991.—Rehearing denied June 3, 1991.*

CALVO, J., took no part.

Melvyn H. Berks, of Des Plaines, for appellant.

Joel S. Ostrow, of Chicago, for appellee.

JUSTICE HEIPLE delivered the opinion of the court:

This case concerns the division and distribution of marital property between a lawyer and his spouse. There are two issues. The first is whether a lawyer's contingent fee contracts are subject to valuation, division and distribution as part of the marital estate. The second issue is whether professional goodwill is a marital asset and subject to division or distribution. Our conclusion is that neither contingent fee contracts nor professional goodwill is subject to valuation, division or distribution as marital assets.

The circuit court of Cook County determined that contingent fee contracts are marital assets which are subject to equal division between the parties. The court also determined that the goodwill of the husband's law practice is a marital asset. The appellate court affirmed the valuation and distribution of goodwill, but held that contingent fees are not marital assets subject to division. (197 Ill. App. 3d 232.) We reverse and remand.

We agree with that part of the appellate court's opinion which found that contingent fees are not marital assets. In its determination, the appellate court relied on three factors:

"First, the nature of a contingent fee contract indicates that an attorney has neither the right to receive the fee until the case is disposed of, nor any assurance that he

ever will receive the fee. Second, the amount of the contingent fee depends on the amount of the award or settlement in the case; therefore its ultimate value, if any, remains highly speculative during the pendency of the case. *** Third, the worth of a contingent fee to an attorney, if any, remains intangible until the firm receives cash or other consideration for the services rendered." 197 Ill. App. 3d at 237.

The context for the consideration of fees, contingent or otherwise, is in the determination of income for support and maintenance. Fees earned by an attorney contribute to the annual income figures relied upon in awarding maintenance and support. Future earned fees would be considered should the subject of maintenance be revisited.

Additionally, we note the impermissible ethical conflict posed by a court-ordered division of contingent fees. Rule 5.4 of the Illinois Rules of Professional Conduct (134 Ill. 2d R. 5.4) provides in part:

"(a) A lawyer or law firm shall not share legal fees with a nonlawyer, except that:

(1) an agreement by a lawyer with the lawyer's firm, partner, or associate may provide for the payment of money, over a reasonable period of time after the lawyer's death, to the lawyer's estate or to one or more specified persons;

(2) a lawyer who undertakes to complete unfinished legal business of a deceased lawyer may pay to the estate of the deceased lawyer that proportion of the total compensation which fairly represents the services rendered by the deceased lawyer; and

(3) a lawyer or law firm may include nonlawyer employees in a compensation or retirement plan, even though the plan is based in whole or in part on a profit-sharing arrangement." 134 Ill. 2d R. 5.4.

This court outlined the potential harms associated with fee-sharing arrangements between attorneys and non-attorneys in *O'Hara v. Ahlgren, Blumenfeld &*

*Kempster* (1989), 127 Ill. 2d 333 (revenue-sharing agreement between attorney's widow and new law firm to which she sold her husband's practice held to violate Rule 3—102 of the Code of Professional Responsibility (107 Ill. 2d R. 3—102)). While it is not necessary to here restate these harms in full, we reaffirm the reasoning of *O'Hara* and decline to enlarge the exceptions to include a contingent fee fee-sharing arrangement resulting from a judgment of dissolution.

We next address the issue of the goodwill value of the law practice. Goodwill represents merely the ability to acquire future income. Consideration of goodwill as a divisible marital asset results in gross inequity.

In the instant case, the trial court purported to divide the marital assets but offset an award of real assets to the wife against professional goodwill or blue sky which was assigned to the lawyer husband. This type of disproportionate division has been the basis for the decisions of other State courts that professional goodwill is not a marital asset. *Holbrook v. Holbrook* (Wis. App. 1981), 103 Wis. 2d 327, 309 N.W.2d 341 (marital estate did not include goodwill or intangible value of husband's partnership interest in reputable law firm); *Powell v. Powell* (1982), 231 Kan. 456, 648 P.2d 218 (goodwill in a professional medical practice was not an asset subject to division in a divorce action).

Panels of the Illinois appellate court have similarly held that the goodwill of a professional business is not marital property subject to division. The first district adopted this position with its decision *In re Marriage of Wilder* (1983), 122 Ill. App. 3d 338. The appellate court held that the trial court's failure to set a fixed monetary value for goodwill in valuing the husband's stock in his medical practice, a professional corporation, was not error. (122 Ill. App. 3d at 348.) The *Wilder* position was in contrast to the earlier fifth district deci-

sion *In re Marriage of White* (1981), 98 Ill. App. 3d 380, wherein the appellate court stated that goodwill is a factor to be considered in valuing a professional corporation "under the theory that despite the intangible quality of good will in a professional practice, it is of value to the practicing spouse both during and after the marriage and its value is manifested in the amount of business and, consequently, in the income which the spouse generates." (98 Ill. App. 3d at 384.) The *Wilder* court held that the *White* definition of goodwill is reflected in three of the factors which the trial court must consider in reaching a just property distribution under section 503(d) of the Illinois Marriage and Dissolution of Marriage Act (the Dissolution Act) (Ill. Rev. Stat. 1989, ch. 40, par. 101 *et seq.*):

"[T]he relevant economic circumstance of each spouse when the division of property is to become effective[,] *** [the] occupation, amount and sources of income, vocational skills, [and] employability *** of each of the parties *** [and] the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1989, ch. 40, pars. 503(d)(4), (d)(7), (d)(10).

The third district followed the reasoning of *Wilder* in *In re Marriage of Courtright* (1987), 155 Ill. App. 3d 55, holding that the goodwill value of the husband's medical practice was not a marital asset. The court stated:

"Although many businesses possess this intangible known as good will, the concept is unique in a professional business. The concept of professional good will is the sole asset of the professional. If good will is that aspect of a business which maintains the clientele, then the good will in a professional business is the skill, the expertise, and the reputation of the professional. It is these qualities which would keep patients returning to a doctor and which would make those patients refer oth-

ers to him. The bottom line is that this is reflected in the doctor's income-generating ability.

\* \* \*

Although good will was not considered in the court's valuation of the business itself, it was a factor in examining [the husband's] income potential. To figure good will in both facets of the practice would be to double count and reach an erroneous valuation." 155 Ill. App. 3d at 58-59.

The reasoning presented in *Courtright* is correct. Adequate attention to the relevant factors in the Dissolution Act results in an appropriate consideration of professional goodwill as an aspect of income potential. The goodwill value is then reflected in the maintenance and support awards. Any additional consideration of goodwill value is duplicative and improper.

For the foregoing reasons, we affirm in part and reverse in part the judgment of the appellate court, reverse the judgment of the circuit court, and remand the cause to the circuit court for further proceedings.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court reversed;*
*cause remanded.*

JUSTICE CALVO took no part in the consideration or decision of this case.