Jay Myoung YOON, Appellant–Respondent,

v.

Sunsook YOON, Appellee–Petitioner.

No. 49A02–9611–CV–733.

Court of Appeals of Indiana.

Oct. 21, 1997.

David A. Clase, Harper, Clase & Grimmett, P.C., Indianapolis, Karen A. Wyle, Bloomington, for Appellant–Respondent.

J. Gregory Garrison, Michael A. Kiefer, Martha J. Mondou, Garrison & Kiefer, P.C., Indianapolis, Scott Richardson, Indianapolis, for Appellee–Petitioner.

## OPINION

FRIEDLANDER, Judge.

Jay Myoung Yoon appeals the judgment in his marital dissolution action instituted by Sunsook Yoon. Jay presents the following restated issues for review:

1. Did the trial court err in computing the child support payment?

2. Did the trial court err in determining the value of Jay's medical practice?

3. Did the trial court err in dividing the marital assets of the parties?

4. Did the trial court err in prohibiting Jay from testifying as an expert medical witness?

5. Did the trial court err in denying Jay's motion for change of judge?

Sunsook, on cross-appeal, presents the following restated issue for review:

6. Did the trial court err in determining that Jay had not dissipated the marital assets?

We affirm in part and reverse and remand in part.

The parties' twenty-three-year marriage was dissolved by an August 15, 1996 decree of dissolution. At the time of the dissolution, there were two minor children of the marriage and one child over the age of majority. The trial court entered findings of fact and conclusions of law pursuant to Ind.Trial Rule 52(A) regarding payment of child support and division of marital property. Additional facts will be provided where relevant.

1.

■ The trial court ordered Jay to pay $698.00 per week for support of the minor children and 50% of their college expenses. Neither party challenges the court's order, however, Jay contends that the court committed an abuse of discretion by failing to abate his child support obligation to the extent it duplicates the contribution for the children's room, board, and other living expenses while at college.

Post-secondary education expenses incurred on behalf of children may be added to a basic child support obligation. Ind.Child Support Guideline 3(E). Commentary 3(b) to this guideline provides that, if college expenses are provided separate from child support, "support paid to the custodial parent should be reduced or eliminated, at least while the student is away from the household and at school." Therefore, when a parent is ordered to pay child support and a portion of the child's college expense, the trial court must consider full or partial abatement of the basic child support obligation. Such a system avoids the duplication of payment for a single expense, which would result in a windfall to the custodial parent. *Stover v. Stover,* 645 N.E.2d 1109 (Ind.Ct.App.1995).

Sunsook, the custodial parent, does not argue, and the record fails to demonstrate, that the trial court abated Jay's child support obligation for the time during which the minor children were at school. This was error. Thus, we remand this case to the trial court and instruct the court to recompute Jay's child support obligation for those time periods when the minor children are actually away attending college on campus, and to include either a full or partial abatement of child support during such times.

■ Jay asserts that the trial court erred in determining his child support obligation because the court failed to take into account evidence submitted after January 1995, such as Jay's health difficulties and changes in the medical industry, which all indicated a reduction in his level of income.

■ The trial court entered findings of fact relevant to the issue of child support. Therefore, we must first determine whether the evidence supports the findings and then whether the findings support the judgment. The findings and conclusions will be set aside only if they are clearly erroneous, *i.e.,* if the record contains no facts or inferences supporting them. Reversal of a finding is only appropriate if the finding was clearly against the logic and effect of the facts, or reasonable probable deductions to be drawn therefrom. *Nat'l. Advertising Co. v. Wilson Auto Parts, Inc.,* 569 N.E.2d 997 (Ind.Ct.App.1991).

The trial court found that Jay had and continues to have the ability to earn $18,888.98 per week and based his child support obligation upon this amount. Further, the trial court found that Jay "has the ability to determine and set his own income level and has attempted to reduce it during the pendency of this action, not because of the condition of his health, but by failing and refusing to submit prompt and timely bills to his patients and hospitals." Appellant's Appendix at 15.

In January 1995, Jay's gross income was $18,888.98 per week. However, at trial Jay presented evidence that his income level had been reduced substantially during 1995 and the first eight months of 1996 because his health was declining and industry trends were making it difficult for his solo practice to compete. Cameron McQuay, a certified public accountant appeared on Sunsook's behalf and testified that he visited Jay's office in October 1995 and, at that time, Jay was operating an ongoing medical practice and had scheduled patients through March 1996.

The level of income attributed to Jay is supported by the evidence. The trial court did not err in using this amount to calculate the child support obligation.

2.

■ Jay argues that the trial court erred in determining the value of his medical practice because the court considered the intangible asset of goodwill in its valuation and

accepted a valuation which failed to take account of his deteriorating health and specific industry trends. Before discussing this contention, we address Sunsook's assertion that the doctrine of waiver precludes Jay from raising this issue.

During cross-examination of R. James Aldering, Jr.,[1] there was a substantial discussion by the court and the parties' counsel of the application of the case law from *Porter v. Porter,* 526 N.E.2d 219 (Ind.Ct.App.1988), *trans. denied,* regarding the inclusion of goodwill in valuation. The issue was not waived.

Jay asserts that goodwill should not be treated as a divisible marital asset because, *inter alia,* such a practice represents the minority viewpoint among other states, will encourage a "battle of the experts", and goodwill is "future earnings by another name." Appellant's Brief at 17.

■ We established in *Porter,* 526 N.E.2d 219, that the goodwill of a professional practice may be included in the marital estate for purposes of property distribution pursuant to a dissolution decree. We decline Jay's invitation to revisit the question even though numerous jurisdictions have refused to consider goodwill in evaluating a professional practice.

In *Porter,* 526 N.E.2d 219, 224, (citing *In re Marriage of Lukens,* 16 Wash.App. 481, 486, 558 P.2d 279 (1976)), we acknowledged the conceivable difficulties with valuing professional goodwill:[2]

The fact that professional goodwill may be elusive, intangible, and difficult to evaluate is not a proper reason to ignore its existence.

Here, again, we recognize the possibility that experts will disagree on the value of a professional practice, but refuse to alter our valuation system due to such potential difficulties.

■ The accepted definition of goodwill is the expectation of continued public patronage. *Porter,* 526 N.E.2d at 219 (citing *Matter of Marriage of Fleege,* 91 Wash.2d 324,

---

**1.** Aldering, a certified public accountant with experience in valuing businesses, testified on Sunsook's behalf.

**2.** Jay aptly labels this potential difficulty as "battle of the experts".

588 P.2d 1136 (1979)). In order to determine the value of goodwill, the present value of that expectation is considered. In contrast, a valuation concerning future earnings does not focus on the present value of expected public patronage. Goodwill and future earnings are distinguishable from each other.

For the reasons aforementioned, we conclude that the trial court did not err in considering goodwill in evaluating Jay's medical practice.

Next, we address Jay's argument that the trial court improperly failed to consider his deteriorating health and certain industry trends.[3]

The trial court found:

[Jay] has the ability to determine and set his own income level and has attempted to reduce it during the pendency of this action, not because of the condition of his health, but by failing and refusing to submit prompt and timely bills to his patients and to hospitals.

Appellant's Appendix at 15.

Jay's earning level declined substantially from 1994 to 1995. According to Jay, the decline resulted from his deteriorating health and certain industry trends which made it more difficult for solo practitioners to compete. Sunsook presented evidence that the reduction was attributable to Jay's failure to appropriately bill for his services. The trial court weighed the evidence presented and agreed with Sunsook. Jay has not demonstrated that the trial court did not consider the evidence he offered. Instead, Jay asks us, in effect, to reweigh the evidence but this is a task we are ill-equipped to perform.

The evidence supports the finding and, therefore, the trial court's acceptance of the valuation figure was not error.

3.

■ Jay contends that the trial court erred in dividing the marital property of the parties because it took into account his future earning capacity when determining the value of the medical practice. Specifically, Jay asserts that goodwill and future earnings are indistinguishable and that consideration of his future earning capacity resulted in a windfall for Sunsook. However, as previously discussed, goodwill and future earnings are different elements. Therefore, Jay's assertion is restated as whether the trial court's division constituted error.

■ The trial court has discretion to divide the marital property unequally, but when it makes such a division, Ind.Code Ann. § 31–1–11.5–11(c) (West Supp.1996) requires the court to set forth a basis for its decision. *In re Marriage of Snemis*, 575 N.E.2d 650 (Ind.Ct.App.1991). For example, disparate earning abilities of the parties would permit an unequal division. IC § 31–1–11.5–11(c)(5).

The court determined that Sunsook should receive 55.4% of the marital assets. In support of the decision, the court found:

(105) ... that the present and future earning ability of the parties is disparate in that [Jay's] present ability and future ability to earn through his medical practice is greater.

Appellant's Appendix at 19. The evidence at trial supports the finding and, therefore, the trial court did not err in employing Jay's present and future earning ability as the basis for the unequal distribution of marital property.

4.

■ Jay claims that the trial court committed reversible error by not allowing him to testify as an expert witness regarding his medical condition.

■ The trial court has broad discretion in ruling on the propriety of expert testimony and will only be reversed for an abuse of discretion. During direct examination, if the trial court determines that a witness may not testify, the proponent of the excluded testimony must make an offer of

---

**3.** Jay offers *Quillen v. Quillen*, 659 N.E.2d 566, 572–73 (Ind.App.1995), as guidance for his argument. In *Quillen*, the court stated that it "has never upheld an asset valuation that completely ignores factors which, as admitted by the supporting valuation expert, would have a negative effect on the asset's value." Jay's reliance is misplaced because his premise, *i.e.* that the trial court completely ignored the evidence of industry trends and Jay's health, is not applicable.

proof to preserve the ruling for appellate review. The offer must show the substance, relevancy, materiality, and purpose of the excluded evidence in order to enable the reviewing court to determine whether exclusion was proper. *Donaldson v. Indianapolis Pub. Transp. Corp.*, 632 N.E.2d 1167 (Ind.Ct. App.1994).

During Jay's direct examination, his counsel raised the matter of Jay's medical condition. Sunsook objected on the ground that Jay was not qualified to provide expert testimony and the trial court sustained the objection. Although we can speculate that Jay would have testified that the condition of his health was deteriorating and that such a condition was relevant and material to the case, Jay bore the burden of providing such information. Here, Jay failed to make an offer of proof. Therefore, we cannot determine whether Jay was prejudiced by the trial court's ruling. Thus, we cannot say that the trial court committed reversible error in excluding Jay's expert testimony.

### 5.

█ Jay asserts that the trial court erred when it denied his motion for change of judge.

Ind.Trial Rule 76(C) governs applications for change of judge and imposes specific time limits for filing such motions. However, the rule permits a party to file an application subsequent to expiration of the time limits in certain situations and requires verification of the application "personally by the party himself...." T.R. 76(C)(6).

On the first day of trial, Jay made an oral, unverified motion for change of judge based upon bias and prejudice.[4] This motion did not comply with the requirements of T.R. 76(C)(6) and, therefore, the trial court's denial did not constitute reversible error.[5]

### 6.

█ Sunsook argues that the trial court erred by failing to find that Jay had dissipated certain marital assets after the parties separated. Specifically, Sunsook asserts that Jay expended approximately $1,177,000 from the parties' bank accounts and that Jay's distributive share should have been reduced by that amount. The trial court found that Jay did not dissipate assets during the marriage. Therefore, the standard of review under T.R. 52(A) is applicable.

At trial, substantial evidence was presented concerning authority over, and deposit and withdrawal activity from, the parties' bank accounts. For example, Jay testified that approximately sixty to seventy percent of the gross receipts from the medical practice, which he deposited into a certain account, was spent on overhead expenses for the practice.

There was evidence to support the finding that Jay did not dissipate the marital assets and the finding supports the conclusion that the distributive share awarded to Jay is the appropriate amount.

Judgment affirmed in part and reversed and remanded in part.

KIRSCH, J., concurs.

BARTEAU, J., concurs with separate opinion.

BARTEAU, Judge, concurring with opinion.

I write separately to express my dissatisfaction with the present state of Indiana law concerning the valuation of professional goodwill in dissolution proceedings. This issue has resulted in various and conflicting approaches among the states, and it is an issue that has not yet been addressed by the Indiana Supreme Court.

The Indiana Court of Appeals has held that professional goodwill is a divisible marital asset. *See, e.g., Berger v. Berger*, 648 N.E.2d 378 (Ind.Ct.App.1995); *Cleary v. Cleary*, 582 N.E.2d 851 (Ind.Ct.App.1991); *Porter v. Porter*, 526 N.E.2d 219 (Ind.Ct.App. 1988). Goodwill has been defined as follows:

> The advantage or benefit which is acquired by an establishment beyond the mere value of the capital stock, funds, or property

---

4. Jay's oral motion falls under the exception provided by T.R. 76(C)(6).

5. We decline Jay's invitation to consider the affidavit which was submitted for the first time on appeal.

employed therein, in consequence of the general public patronage and encouragement which it receives from constant or habitual customers on account of its local position, or common celebrity, or reputation for skill, or affluence, or punctuality, or from other accidental circumstances or necessities, or even from ancient partiality or prejudices.

*Cleary,* 582 N.E.2d at 853; *Porter,* 526 N.E.2d at 223. Goodwill has been further defined as the expectation of continued public patronage. *Cleary,* 582 N.E.2d at 853; *Porter,* 526 N.E.2d at 224. Based upon these definitions of goodwill, and based upon caselaw borrowed from other states, the *Porter* court further stated:

> It is generally agreed that in valuing a professional practice, or an interest therein, for equitable distribution, it should not make any significant difference whether the practice is conducted as a corporation or a professional association, a partnership, or a sole proprietorship.

526 N.E.2d at 223.

The *Porter* court also held that goodwill has value subject to division even if it is not readily marketable. The court illustrated this concept as follows:

> The recently graduated young professional who goes into business for himself may reasonably expect the initial years of his practice to be less profitable, this expectation being attributed in part to a lack of goodwill or "that the old customers will resort to the old place." Similarly, if Dr. Lukens were to abandon his Tacoma practice and relocate as a sole practitioner in another state, he also should anticipate a shortage of business, even though his practice consists of the same physical assets and he presumably possesses the same degree of skill. *Again the difference must be attributed to his not having developed*

> *in his new locale a reputation as to skill, efficiency, and the other elements comprising goodwill.*
>
> *Accordingly we do not think the dispositive factor is whether Dr. Lukens can sell his goodwill. His goodwill has value despite its unmarketability,* and so long as he maintains his osteopathic practice in Tacoma he *will continue to receive a return on the goodwill associated with his name.*

*Porter,* 526 N.E.2d at 225 (citing *In re Marriage of Lukens,* 16 Wash.App. 481, 558 P.2d 279, 281 (1976)).

In sum, the Indiana Court of Appeals has held that professional goodwill is a divisible marital asset, regardless of whether or not the professional is a sole practitioner, and regardless of whether the professional's goodwill is readily marketable. However, these concepts are not without opposition in other jurisdictions.

Illinois courts have divided the concept of goodwill into two categories, personal goodwill and enterprise goodwill.[6] *See In re Marriage of Talty,* 166 Ill.2d 232, 209 Ill.Dec. 790, 794, 652 N.E.2d 330, 334 (1995). Personal goodwill is the goodwill that is attributable to one's personal efforts and characteristics, and enterprise goodwill is the goodwill that inheres in a business, existing independently from one's personal efforts. *See id.* Under Illinois law, only enterprise goodwill, and not personal goodwill, is a divisible marital asset. *See id.; see also In re Marriage of Zells,* 143 Ill.2d 251, 157 Ill.Dec. 480, 572 N.E.2d 944 (1991).

With respect to the goodwill of a professional practice, Illinois has determined that such goodwill is personal in nature, and is therefore not a divisible marital asset. *In re Marriage of Zells,* 157 Ill.Dec. at 482, 572 N.E.2d at 946. In making this determination the Supreme Court of Illinois stated:

> ual, the profits are attributable to the individual, not the business.... It would be appropriate to view personal attributes as "reputation" rather than as "goodwill." By using reputation and goodwill interchangeably, the courts have created a confused situation in the evaluation of professional businesses.
>
> *Id.* at 214–15.

---

**6.** For a good discussion of the distinctions between personal/professional goodwill and enterprise/business goodwill, see Allen Parkman, *The Treatment of Professional Goodwill in Divorce Proceedings,* 18 Fam.L.Q. 213 (1984). In this article, Parkman states:

> To the extent that a business is more profitable than it's competitors because of the superior abilities or business connections of an individ-

Although many businesses possess this intangible known as good will, the concept is unique in a professional business. The concept of professional good will is the sole asset of the professional. If good will is that aspect of the business which maintains the clientele, then the good will in a professional business is the skill, the expertise, and the reputation of the professional. It is these qualities which would keep patients returning to a doctor and which would make those patients refer others to him. The bottom line is that this is reflected in the doctor's income generating ability.

.... To figure good will in both [valuation of the business itself and as a factor in examining the husband's income potential] would be to double count and reach an erroneous valuation.

*Id.* Thus, under Illinois law, professional goodwill is not a divisible marital asset, but rather, it is more appropriately considered as a facet of the spouse's income potential which impacts the maintenance and/or support awards. *See id.*

Other jurisdictions have also determined that professional goodwill is not a divisible marital asset. *See, e.g., Nail v. Nail,* 486 S.W.2d 761 (Tex.1972) (holding that the accrued goodwill of a medical practice based on the personal skill, experience, and reputation, as well as the expectation that the doctor would continue to practice, was not a divisible marital asset). The Wisconsin Court of Appeals has stated:

> We are not persuaded that the concept of professional goodwill as a divisible marital asset should be adopted in Wisconsin.... The concept of professional goodwill evanesces when one attempts to distinguish it from future earning capacity. Although a professional business's good reputation, which is essentially what it's goodwill consists of, is certainly a thing of value, we do not believe that it bestows on those who have an ownership interest in the business, an actual, separate property interest. The reputation of a law firm or some other professional business is valuable to its individual owners to the extent that it assures continued substantial earning in the future.

> It cannot be separately sold or pledged by the individual owners. The goodwill or reputation of such a business accrues to the benefit of the owners only through increased salary.

*Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343, 350 (1981). The Wisconsin Court of Appeals also noted that because the professional goodwill was reflected in the spouse's salary, and the spouse's salary was considered to set a family support award, treating the goodwill as divisible marital asset would constitute double counting of the goodwill. *Id.* at 352.

Building on the analysis set forth in *Holbrook,* the Supreme Court of Kansas has also held that professional goodwill is not a divisible marital asset. In *Powell v. Powell,* the court stated:

> We are not persuaded that a professional practice such as Dr. Powell's has a good will value. The practice is personal to the practitioner. When he or she dies or retires nothing remains. The professional's files and lists of clients are of no use to others. The very nature of a professional practice is that it is totally dependent on the professional. We refuse to adopt the theory that good will in a professional practice is an asset subject to division in a divorce action. The issue is without merit.

231 Kan. 456, 648 P.2d 218, 222–23 (1982).

These cases illustrate the difficulties inherent in defining and valuing the goodwill of a professional practice. The personal nature of professional goodwill is especially obvious in the context of a sole practitioner. The Indiana Supreme Court has not yet addressed the issues of whether Indiana will recognize a distinction between personal/professional goodwill and enterprise/business goodwill, and, in the context of the valuation of the business of a sole practitioner, whether the sole practitioner's business possesses any goodwill value that is subject to division as a marital asset; nor has the supreme court considered whether, if such a distinction is recognized, personal/professional goodwill is more appropriately considered, not as an asset, but as an indication of income potential which can be a factor in making an unequal division of marital assets and in making a

maintenance award. *See* Ind.Code § 31–1–11.5–11.

Thus, although the reasoning previously set forth by the Indiana Court of Appeals indicates that Indiana will recognize professional goodwill as a divisible marital asset without any distinction between goodwill that is personal in nature and goodwill that is attributable to a business/practice itself, I disagree with such an approach for the reasons set out above. I therefore concur with the majority's application of Indiana caselaw, but urge the Indiana Supreme Court to refine the definition of goodwill and the circumstances under which it will be considered as a divisible marital asset. In all other respects I concur with the majority opinion.